WILLIAM O'HARA, GUARDIAN OF  
H. W. COBERTH,  
vs.  
BASIL SHEPHERD AND OTHERS.     MARCH TERM, 1851.

[GUARDIAN AND WARD—CHANCERY PRACTICE—ORPHANS COURT.]

A SUPPLEMENTAL bill, after a decree, must not seek to vary the principles of the decree, but, taking that as the basis, seek merely to supply any omissions there may be in it, or in the proceedings which led to it, so as to enable the Court to give full effect to its decision.

A supplemental bill may be filed as well after as before a decree; and if after, may be either in aid of the decree, that it may be carried into full execution, or that proper directions may be given upon some matter omitted in the original bill, or not put in issue by it or by the defence made to it.

A supplemental bill, in the nature of a bill of review, cannot be filed without leave of the Court first obtained.

Upon a bill by a guardian against the ward's estate, a decree for an account was passed. Afterwards, and after the former guardian had resigned his office, the new guardian filed a supplemental bill, asking for a further account for a certain sum belonging to the same estate, for which it charged the administrator was responsible. HELD—That this supplemental bill did not make a new case, nor seek to vary the principle of the decree, and was properly filed by the new guardian.

An administrator, with the approval and sanction of the guardian, loaned a certain sum belonging to his intestate's estate, and the property of the minor, and assigned the mortgage taken for its security to the guardian. The Orphans Court subsequently passed the accounts of the guardian, in which this mortgage was treated as part of the ward's estate. HELD— That by this action of the Orphans Court, they had given their sanction to this transaction as effectually as if they had previously ordered it, and the administrator is not responsible for loss arising therefrom.

By the several Acts of 1798, ch. 101, 1816, chs. 154 and 203, and 1819, ch. 144, the Orphans Courts are empowered to direct the guardians of minors to invest the proceeds of the sales of their real, leasehold, or personal estates in public stocks, or other permanent funds, in the name of their wards.

The direction that the securities should be made in the name of the infant, is matter of form, and though very proper to be followed, yet could not have the effect of avoiding the security, if not pursued.

By the Act of 1831, ch. 315, the Orphans Courts are authorized to order executors, administrators, and guardians to bring into Court or place in

bank stock, or any other good security, any money or funds received by them, and to direct the manner and form in which such investment shall be made.

A guardian depositing money in a bank, with the sanction of the Orphans Court, will be protected from loss, though the bank may become insolvent.

To any account between the ward and a surety in his former guardian's bond, the principal in that bond, or the trustee of the principal, he being insolvent, is a necessary party.

Where the Orphans Court sanctions a loan, the guardian will not be liable for loss, except for subsequent neglect in permitting the property to be wasted, or by some act of negligence, or the want of due diligence on his part subsequent to the loan.

The Orphans Court passed an order directing an administrator to retain in his hands $2,000, as a loan to himself, being the amount of a bond which he had executed to the guardian and the ward, and secured by mortgage. HELD—That this order was a legitimate exercise of power by the Orphans Court, because it in effect treats the mortgage from the administrator to the guardian as an investment by the latter.

Accounts settled by an executor or administrator in the Orphans Court, are *prima facie* correct, and it is incumbent on him who disputes them to point out and make manifest the error.

[The original bill in this case was filed on the 10th of July, 1843, by George McNeir, the then guardian of Hezekiah W. Coberth, an infant, against the defendant Basil Shepherd, as administrator of Hezekiah Coberth deceased, the father of said infant, for an account of his administration of the personal estate of said intestate. The bill charges that letters *ad colligendum* were first granted to one George W. Dorsey, who collected and sold for credit and for cash, various portions of the said estate; and that, in 1842, these letters were revoked, and letters of administration were granted to the defendant, who then had a settlement with said collector, the latter paying over to him the money and bonds received from the purchasers, as well as the property unsold; that Shepherd has passed one account as administrator, which is erroneous and imperfect; that the time for settling up his administration has long since passed, but he has refused to pass his final account and pay over to the plaintiff as aforesaid, the property which he admits to be in his hands, but has used and applied it for his own purposes. The bill asks for a discovery of the particulars of said settle-

ment with the collector, an account of his administration, and that he be compelled to pay over to the plaintiff as guardian, the money and property remaining in his hands, and for general relief.

The answer of Shepherd gives a particular account of the settlement referred to, of his administration of the estate, and denies all the charges of misapplication of the property contained in the bill. In accounting for the property in part, he avers, that about the 12th of March, 1842, he, at the suggestion and instance of said George McNeir, who agreed to take the same in payment of so much on account of his ward's estate from respondent, made a loan of $1,000, to William McNeir, the brother of said George, of the money of his intestate, which loan was afterwards approved of by the Orphans Court. That under the authority, and by direction of said Court, he had retained $587 63 of said estate, as a loan to himself on interest, secured by a mortgage on his real and part of his personal estate, to the amount of $2,000; and that the said Court had authorized him to retain the balance of said $2,000 out of the first receipts from the estate of his intestate.

By a supplemental bill, filled on the 13th of January, 1844, this loan of $2,000 to himself, was attacked upon the ground that it was obtained by false representations to said Court of the sufficiency of the security to be given for it, whereas the said Shepherd was utterly unable to pay his debts, and the property included in the mortgage was already incumbered beyond its value, and would not be regarded in the market as good security for one-tenth of said $2,000. That this mortgage was executed without the consent of the plaintiff as guardian, as aforesaid, and was in fact a *devastavit* on the part of said defendant as administrator, as aforesaid. This bill prays for an account of the money received under this mortgage, and that the same may be cancelled.

Shepherd answered this bill, denying its allegations, and averring the entire sufficiency of the property mortgaged, to secure the loan thus made to himself.

Various proceedings were then had in the cause; and on the 10th of October, 1845, the Chancellor passed a decree that the parties "Account of, and concerning the several matters and things, as set forth in the pleadings in the cause," &c.

After this, George McNeir resigned his guardianship, removed out of the State, and William O'Hara, who was one of the sureties on said McNeir's guardian's bond, was appointed guardian in his place; and on the 18th of February, 1850, filed a supplemental bill in the cause, in which, after reciting the previous proceedings in the cause, he avers that the loan of $1,000 to William McNeir, and secured by a mortgage on certain property, was made without the knowledge and consent of George McNeir, the former guardian of the minor, and that if it ever received the approval of the Orphans Court, such approval was procured through fraudulent concealments by Shepherd as to the value of the property given as security for the loan; that the same was wholly inadequate as such security, and has since been sold under prior mortgages which it has failed to pay, so that there will be a loss to the minor of nearly the whole sum, with interest. This bill, then, prays that Shepherd may be compelled to account for this sum, with interest; and in addition to the relief prayed for by the original bills, prays also that the property mortgaged by Shepherd to secure the loan to himself of $2,000, may be decreed to be sold to pay the same; or if this cannot be done, then, that a receiver may be appointed to take charge of it, and for general relief.

The answer of Shepherd to this bill, denies its allegations as to the loan to William McNeir, and insists that it was known to George McNeir, the former guardian, and was actually made with his consent, and at his suggestion, and that it has received the approval of the Orphans Court, without any such false representations or concealment on his part, as charged in the bill. It also denies the regularity of the proceeding, in filing this supplemental bill; and insists that the decree of the 10th of October, 1845, dispensed with the neces-

sity of any such proceedings, though respondent is willing and ready to account, if required by the Court.

The question as to the regularity of filing this supplemental bill was argued by counsel, and the Chancellor thereupon pronounced the following opinion.]

THE CHANCELLOR :

The question discussed in the written arguments of the solicitors, and upon which it appears to be their desire to take the opinion of the Court, relates to the regularity and propriety of filing the supplemental bill of the 18th of February, 1850. But the Chancellor does not see very clearly how the question is brought before him, or by what form of order or decree he can settle it. The case is not submitted upon demurrer, nor upon motion to take the supplemental bill off the file, and therefore, if he were to pass an order directing the bill to be taken off the file, or should declare that no relief can be had under it, the record would represent him as acting *sua sponte*, there being nothing in the proceedings which calls for or would justify the Court in so disposing of the cause. But although the question is submitted in this informal and irregular way, and although I should certainly not feel at liberty to pass an order disposing of the case, unless something was put upon the record by the parties properly presenting the question for the judgment of the Court, I nevertheless am willing so far to comply with the desire of the parties, as to express my opinion upon it.

The objection is that the supplemental bill makes a new case, and is not in aid of that which the Court has already done. The rule appears to be, that a supplemental bill after a decree, must not seek to vary the principle of the decree, but taking the principle of the decree as a basis, seek merely to supply any omissions which there may be in it, or in the proceedings which led to it, so as to enable the Court to give full effect to its decision ; 3 *Daniel's Ch. Pr.*, 1662. According to *Mr. Justice Story*, a supplemental bill may be filed as well after as before a decree ; and the bill, if after a decree, may

be either in aid of the decree, that it may be carried into full execution, or that proper directions may be given upon some matter omitted in the original bill, or not put in issue by it, or by the defence made to it; *Story's Eq. Pl., sec.* 338.

Now I do not regard the supplemental bill in this case as making a new case, or as seeking to vary the principle of the decree of the 10th of October, 1845. That decree directed the then guardian of the infant, and the defendant Shepherd to account of and concerning the several matters and things as set forth in the pleadings in the cause. The bill now under consideration does not seek to vary the principle of that decree, nor does it make a new case. It supplies new elements for the account, by introducing matters omitted in the original bill, and not put in issue by it or by the defence made to it; but the principle of the decree, notwithstanding the introduction of the new matter, stands, and the parties are still to account of and concerning the matters in the pleadings mentioned, and these matters in the original and supplemental bill all have reference to the same estate.

The supplemental bill, it is true, in addition to the relief prayed by the original bill, and to the prayer for an account of and concerning the new matter, prays for a sale of certain property, and for a receiver. But the question now under consideration is not, whether upon this bill, and in this cause, this kind of relief may be granted after the decree for an account. The question under examination is, whether a new case is made by this supplemental bill, so that any relief which may be granted upon it, will vary the principle of the decree of October, 1845. If such is the character of the bill, it should not have been filed in this cause without the leave of the Court, because in that case it must be regarded as a supplemental bill in the nature of a bill of review, which requires such leave. But as the Court may, upon the statements made in this bill, grant relief entirely in accordance with the decree already passed, or in other words, as the additional matters introduced merely supply new elements for the account, I can see no reason why the bill should be rejected. And it may also be observed, that though the defendant Shepherd, in his

answer, denies the regularity of the proceedings on the part of the present plaintiff, yet he expresses his willingness to account, as the Court may direct, in the premises. Having expressed these views, the parties will proceed with the cause as to their counsel may seem proper. That O'Hara, the new guardian, may file a supplemental bill, is quite clear; *Story's Eq. Pl.*, sec. 340.

[Further proceedings were then had, and accounts were stated by the Auditor, to which both parties filed exceptions, the nature of which sufficiently appears from the following opinion of the Chancellor, delivered upon the hearing thereof.]

THE CHANCELLOR:

The material question arising upon the exceptions taken by the parties to the report of the Auditor in this case, relates to the responsibility of the defendant Shepherd, for the loss occasioned by the loan of $1,000 to William McNeir, in May, 1842.

Shepherd was the administrator of Hezekiah Coberth, and in that capacity, on the 13th of May, 1842, he loaned to William McNeir of the money of his intestate, the sum of $1,000, taking as security therefor a mortgage, executed by the borrower and his wife on certain real and personal property in the city of Annapolis, payable twelve months after date, with interest.

This mortgage, though signed by the mortgagors on the 13th of May, was not acknowledged by them before the judge who took their acknowledgment until the 19th of the month, on which latter day, as appears on the face of the instrument, it was assigned by Shepherd, as administrator of the deceased, to George McNeir, as the guardian of his infant son, Hezekiah W. Coberth. The assignment was acknowledged by Shepherd before the same judge, and at the same time that the acknowledgment of the deed was taken, and the whole recorded together on the 11th of the then ensuing October.

A considerable portion of this debt has been lost, the borrower having become insolvent, and the property mortgaged, for reasons which I do not deem it necessary now to advert to, having proved inadequate to pay the money except to a very limited amount.

An effort has been made to throw the loss upon Shepherd, the administrator of the deceased Coberth, upon the ground that George McNeir, the then guardian of his son, never knew of or sanctioned the loan. But the evidence, oral and documentary, to the contrary is so conclusive, that no conceivable doubt can be entertained upon the subject. The deposition of William McNeir, the mortgagor, taken before the Auditor on the 18th of September, 1852, is so full, explicit, and unanswerable, and so completely establishes the knowledge, consent, and co-operation of George McNeir, that the attempt upon this ground to fix the responsibility upon Shepherd utterly fails. This deposition proves, not simply that George McNeir knew of and consented to the loan in question, but that it was by his advice, instigation, and procurement, that it was made. And in addition to this particular evidence, his guardian's account, settled with the Orphans Court on the 9th of May, 1843, recognises and treats this mortgage as a part of the estate of the ward in his hands. To permit him, therefore, or any other person claiming through or under him, or liable for him as surety, to repudiate this transaction, upon the ground that he did not know of or approve it, would be monstrous. It may also be observed in this connexion, that in an account settled with the Orphans Court by William O'Hara, the complainant and present guardian of the minor, on the 13th of May, 1846, this same debt due by William McNeir and wife is treated as a part of the estate of the ward in his hands.

It is urged, however, that this loan from the administrator to William McNeir, even though approved of and sanctioned by the guardian, was totally unauthorized, and the consequences must be visited upon the former ; and the 5th section of the 12th sub-ch. of the Act of 1798, ch. 101, is referred to in support of this proposition. The provision in this section

is, that on the guardian's executing the bond required of him, the Orphans Court shall have power to order the property of the ward to be delivered to him. The Court then, in this case, might have ordered Shepherd, the administrator, to deliver to George McNeir, the guardian, the property of the ward. But this, it seems, the administrator did, so far as this mortgage or the money borrowed upon it is concerned, without the order, and the Court, by passing the accounts of the guardian from time to time, in which this mortgage was introduced, and treated as in his hands as part of the estate of his ward, have given their sanction to it as effectually as if they had previously ordered it.

The question in reference to this loan is not whether the administrator could legally dispose of the estate of his intestate, there being a duly qualified guardian to whose ward the surplus belonged, but whether the administrator shall be held responsible for making such a loan, when the guardian himself urges him to make it, and agrees and actually does receive from him the security as a part of the estate of the ward, and the Orphans Court, by repeated acts of recognition, give their entire sanction and approbation to it. This loan, in my view of it from the evidence, was the act of the guardian and not of the administrator, and the Orphans Court having approved of it, the question of the power of the administrator does not arise.

There can be no doubt, I suppose, that the guardian under the direction of the Orphans Court might make such a loan. The authority may be found in various Acts of Assembly. The 13th section of the 12th sub-chapter of the Act of 1798, ch. 101, confers full authority upon the Court, though the bond to be taken for the money loaned should be taken to the ward. This, however, is a matter of form, and could hardly have the effect to vitiate the security, if not followed.

The Act of 1816, ch. 154, is applicable to the proceeds of the sales of the real estate of minors, and gives power to the Orphans Courts to order and direct such proceeds to be invested by their guardians in public stocks, or other permanent

funds, and also declares, in the 7th section, that the investments shall be made in the name of the infant. But this, though a direction very proper to be followed, could not have the effect of avoiding the security, if not pursued. A similar authority is to be found in the 2d section of the Act of 1816, ch. 203, which applies to the proceeds of the sales of leasehold estates sold under the authority of the Orphans Court, or any surplus money belonging to the ward; and, by the 2d section of the Act of 1819, ch. 144, the provisions of the Act of 1816, ch. 154, are extended to the personal estate of minors, so that by these several Acts, the Orphans Courts are empowered to direct the guardians of minors to invest the proceeds of the sales of their real, leasehold, or personal estates in public stocks, or other permanent funds, in the names of their wards. But subsequently, by the 5th section of the Act of 1831, ch. 315, the Orphans Courts are authorized to order any executor or administrator or guardian, either of their own appointment, or a natural or testamentary guardian, of whose bond they may have approved, to bring into Court, or place in bank or in other incorporated stock, or in any other good security, any money or funds received by such executor, administrator, or guardian, and the Court is empowered to direct the manner in which the investment shall be made, the money being at all times subject to the order and control of the Court.

This last law, then, completely covers the present case, because it is thought to be quite clear that the subsequent recognition and approval by the Court of the investment, is fully equivalent to a previous direction to make it. The last sentence, in the opinion of the Court of Appeals in the case of *Jenkins* vs. *Walter*, 8 *G. & J.*, 218, is strong to show that a guardian depositing money in a bank, with the sanction of the Orphans Court, will be protected from loss, though the bank may become insolvent.

I am, therefore, clearly of opinion, that Shepherd, the administrator, who, in making this loan to William McNeir, was but the instrument and agent of George McNeir, the guardian of the infant, cannot be held responsible for the loss, and

that his exception to the account B, in respect of this sum of money, is well taken.

But the counsel of Shepherd insists not only that he should be acquitted from all responsibility on account of this loan, but that in this case, and upon this record, the Court should proceed farther, and determine whether O'Hara, the plaintiff, as surety for George McNeir, the former guardian of the infant, is or is not liable for it.

George McNeir, the principal in the bond, as appears by an agreement filed on the 1st of Oct., 1852, obtained the benefit of the insolvent laws on the 27th of Oct., 1845, after the institution of this suit, and his trustee has not been made a party to the cause. His absence presents an insuperable objection to adjudicating the question as between the ward and the parties to the bond of the first guardian. To any account between the ward and the surety in that bond, the principal, or the trustee of the principal, he being insolvent, is a necessary party.

But independently of this, there is another objection to deciding upon the responsibility of the surety in McNeir's bond, which would not be obviated by bringing all the necessary parties to an account before the Court. It has been already observed, that the Orphans Court having recognised the mortgage by William McNeir and wife to Basil Shepherd, and assigned by him to George McNeir, as guardian of the minor, as a valid security and investment of the money of the ward, the legal effect is the same as if their previous authority for the loan had been obtained; and therefore it results, that if the surety of George McNeir is liable for the loss, it must be because of his subsequent neglect in permitting the property to be wasted, or by some act of negligence, or the want of due diligence on his part subsequent to the loan. But no such question as this is presented by the pleadings, and therefore O'Hara would justly complain of being taken by surprise if the Court was now to undertake to fix the responsibility upon him because of the assumed negligence of the principal in the bond. When that question is brought before the proper tribunal, and fairly pre-

sented by the pleadings, and the parties, after full notice, are heard upon it, it will be time enough to decide it. To do so now, upon this record and in this proceeding, would, in my opinion, be unjust. In the case of *Flickinger* vs. *Hull*, 5 *Gill*, 60, it will be found that the question decided by the Court was distinctly presented by the pleadings.

Before proceeding very briefly to decide upon the other exceptions to the report of the Auditor, it may be proper to say a word in reference to the mortgage from Basil Shepherd to George McNeir, dated the 4th of August, 1843. This mortgage was given to George McNeir as guardian of Hezekiah W. Coberth, and was duly acknowledged and enrolled, and, it is admitted, furnishes an ample security for the money loaned. The Orphans Court, as early as the 9th of August, 1842, had ordered the administrator to loan out, on mortgage on real estate, all sums over and above the amount required to pay the debts of the deceased; and on the 8th of August, 1843, they passed another order, directing Shepherd, administrator of Coberth, to retain in his hands $2,000, being the amount of a bond which is recited in and secured by the mortgage of the 4th of August, 1843. I regard this last order as a legitimate exercise of power by the Orphans Court, because it in effect treats the mortgage from Shepherd to the guardian as an invest ment by the latter, and falls clearly within the power conferred upon the Courts by the Acts of Assembly before referred to. But as it is admitted that the money retained by Shepherd is well secured, it cannot be very material whether the Orphans Court transcended their power or not.

By the terms of that mortgage, the principal debt thereby secured, was made payable to the guardian on or before the arrival at full age of the ward; and as that period has not yet arrived, and the money is considered to be amply secured, there would seem to be no necessity, and perhaps it would be injurious to compel its payment, by decreeing a foreclosure and sale of the mortgaged premises at this time. Should the mortgagor fail to pay the interest, or the security of the debt for any reason become precarious, it will be in the power of the present

guardian, at any time, to apply to the Court for the proper relief, and liberty will be reserved to him to do so.

It has frequently been decided by the Court of Appeals, that accounts settled by an executor or administrator in the Orphans Court, are to be treated as *prima facie* correct; and it is incumbent on him who disputes them to point out and make manifest the error. The Auditor has proceeded upon this principle, in stating these accounts, and I do not think the complainant has been successful in showing errors in them.

In the account A. Shepherd, the administrator, according to the report of the Auditor, has been charged with the several sums shown by his administration accounts to have been received by him, and with a small additional sum, as interest upon this money claimed to have been retained by him as a loan, and credited with the allowances made to him in the accounts. This account corresponds with the administrator's accounts, except in the charge for interest, and in the correction of some error in addition, and the allowance of commissions, and by it, Shepherd, the administrator, appears to be indebted to the estate in the sum of $1,859 23.

Now, so far as the Auditor has made the accounts in the Orphans Court the basis of his own account, his report is entirely approved of. There does not appear to me to be the slightest ground to impute negligence to the administrator. Neither is there, in my opinion, any just reason for supposing he has not fully and fairly charged himself with all the assets which can come to his hands. Prior *to the* grant of letters to him, letters *ad colligendum* had been granted to one George W. Dorsey, by whom the personal estate of the deceased was sold; and in the first administration account passed by the administrator, he charged himself with a large amount of bonds and notes, received by him from Dorsey, in December, 1841, which had been taken by the latter from the purchasers of the property. The bonds and notes, or many of them, appear by the receipts filed among the proceedings, to have been placed by the administrator, for collection, in the hands of attorneys, in May, 1842; and by an order of the Orphans Court of Cal-

vert County, passed the 14th of May, 1850, the administrator was directed to discontinue proceedings to collect the claims then remaining uncollected, except three small claims, specified in the order.

In a memorandum at the foot of the account A, the balance ascertained by it to be due from the administrator, is shown to consist—

1st. Of debts received from the Collector still un-
     collected,  .  .  .  .  .  . $883 96

2d. Balance due on the mortgage of the adminis-
     trator, bearing interest from the 10th of
     October, 1851,  .  .  .  .  . 722 28

3d. Cash,  .  .  .  .  .  .  . 252 99

$1,859 23

And it is objected, in the sixth exception of the defendant, that the Auditor should not, in his account, have treated these uncollected debts as cash in the hands of the administrator, for which he can be made at this time liable. Seeing, as I have already stated, that the administrator has used due diligence in settling the estate, it certainly would be wrong now to make him responsible for these unrealized claims as cash, and, judging from the memorandum, I am persuaded the auditor did not propose to do so.

There is one point, however, in which the report is not entirely satisfactory. Of the balance stated in account A, to be due from the administrator to the estate of his intestate, the sum of $883 96, as shown by the memorandum, consists of uncollected debts received by the administrator from the collector. The Orphans Court, by their order of the 15th of May, 1850, directed the administrator not to prosecute further the uncollected claims, except those of inconsiderable amount, because they were by the Court regarded as desperate. Now it does not appear by anything on the face of the Auditor's report, or either of the accounts, whether any, and if any, what proportion of this $883 96 consists of claims which the Orphans Court have considered as desperate, and I shall send

the case back to the Auditor, for the purpose of reporting upon this point, and with directions to ascertain how much is now due from the administrator for cash.

When this report comes in, a decree can be passed directing the payment over to the present guardian of the cash, ascertained to be due from the administrator, and providing for the payment of future collections as they are made, and reserving liberty to the complainant to apply to the Court for such order or decree on the mortgage, as the exigencies of the case may require.

FRANK H. STOCKETT, for Complainant.
A. RANDALL, for Defendant.