EUGENE A. RUDIGER et al., Appellants, *v.* JAMES A. COLEMAN et al., Respondents.

Chancery practice — Supreme Court — when supplemental bill in equity may be filed, even after decree — appeal — equity — when measure of relief upon new trial may be modified in accordance with changes in conditions which took place pending the appeal.

1. By the settled practice of chancery, a supplemental bill might be filed, even after decree, to give effect to the decree rendered, and to secure its fruits to the successful party.    Such a bill, at least when

limited to the same parties, did not initiate an independent suit, but was looked upon as a continuation of the original suit, and as ancillary thereto. The right to file it was undoubted when the decree was menaced in its efficacy by force of .changing circumstances. The ancient jurisdiction of chancery resides in the Supreme Court to-day.

2. On a former appeal to this court in this action (*Rudiger* v. *Coleman*, 199 N. Y. 342) the judgment of the Appellate Division was reversed and that of the Special Term modified in accordance with the opinion. It appeared that the condition of affairs had so changed during the appeal that proceedings were taken in the nature of an application at the foot of the decree to adjust the judgment to the changed situation, resulting in a new interlocutory judgment at Special Term. On appeal therefrom the Appellate Division held that the Special Term was without power to adapt to changed conditions the relief awarded by this court, and that its duty was to repeat, with literal fidelity, the terms of the remittitur. *Held,* that the form and measure of relief should have been adjusted to the changed conditions.

3. On the former appeal to this court, it was held that the defendants held title to certain lands which were the subject of a contract between their decedent and plaintiffs, as trustees for plaintiffs, and were under a duty to reconvey it and that there should be an accounting for rents collected. On the hearing at Special Term after this decision, it appeared that part of the land, the title to which was in controversy, had been condemned pending the appeal by the city of New York and that sales had been made, pending the appeal, by defendants from quarries on the land. *Held, first,* that the defendants holding the lands under a trust which failed, if they had done their duty would have returned them to plaintiffs at the date of the former trial, if not before, and the court, if it entered the proper judgment, would have required them to return the lands, and that the trustees could not profit by delay in the execution of their trust; *second,* that the plaintiffs should recover from the defendants the proceeds of the lands appropriated by the city of New York with interest thereon, the defendants to be credited, however, with the part payments already made and with their reasonable expenses in the proceedings to condemn and a referee should be appointed to report the balance due; *third,* that the defendants should be declared accountable to the plaintiffs for the use of the lands in controversy from the date of the trial to the date of reconveyance, and for the profits realized therefrom, other than the rents of buildings (such rents having been already accounted for), and that a referee should be appointed to take and state said accounts.

*Rudiger* v. *Coleman,* 184 App. Div. 897, modified.

(Argued January 20, 1920; decided March 2, 1920.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered August 2, 1918, modifying and affirming as modified a final judgment of Special Term, with notice of intention to bring up for review divers intermediate orders and judgments which are claimed by the appellants to have necessarily affected the final result.

The nature of the action and the facts, so far as material, are stated in the opinion.

*John C. Wait* and *Howard G. Wilson* for appellants. Plaintiffs are entitled to have the decree of the Court of Appeals fulfilled. (*Sayre* v. *State*, 128 N. Y. 622.) Plaintiff is entitled to recover all, not forty per cent of rents collected by defendants from the Field farm during the period 1899 to 1911. (*Rudiger* v. *Coleman*, 199 N. Y. 347.) Plaintiffs should be granted recovery for rents collected from the Horton tract. (*Rudiger* v. *Coleman*, 199 N. Y. 347.) It was error for the referee and the Supreme Court at Special Term to refuse to take and state any account of the diminution, loss and depletion of the estates, the Field farm and Horton tract, since the last trial in October, 1906, and which resulted from the erroneous judgment appealed from. (*Kelly* v. *S. M. L. Ins. Co.*, 186 N. Y. 16; *Comm. Nat. Bank* v. *Zimmerman*, 185 N. Y. 210; *Ware* v. *Dos Passos*, 162 N. Y. 218; *Everett* v. *Everett*, 180 N. Y. 452; *Smyth* v. *Brooklyn Union El. R. R. Co.*, 193 N. Y. 335; *Matter of City of New York*, 200 N. Y. 536.) It is within the inherent powers of the Supreme Court at Special Term to compel restitution to the plaintiffs for the loss and depreciation of the estates required to be conveyed by the remittitur of the Court of Appeals. (*Mossein* v. *Surety Co.*, 177 App. Div. 822; *Goepel* v. *Robinson M. Co.*, 122 App. Div. 26; *Gillig* v. *Tredwell Co.*, 151 N. Y. 552; *Haebler* v. *Myers*, 132 N. Y. 366.) The Special Term had the power and authority to make restitution to plaintiffs for the losses to the plaintiffs and

from the enrichment of the defendants since the trial and during defendants' possession of the premises and during the pendency of the appeals in this case, and down to the time of the decree or accounting. (*Worrall* v. *Munn*, 38 N. Y. 137; *Holly* v. *Gibbons*, 177 N. Y. 401; *Wallace* v. *Burdell*, 101 N. Y. 13.) The plaintiffs are entitled to all rents collected by the defendants from the Horton tract and Field farm, June 16, 1899, to June 16, 1911. (*Haffey* v. *Lynch*, 193 N. Y. 67; *Worrall* v. *Munn*, 38 N. Y. 138; 53 N. Y. 185; *Beardsley's Appeal*, 10 Atl. Rep. 39; *Kenny* v. *Clark*, 148 U. S. 359; *Ogden Lumber Co.* v. *Busse*, 92 App. Div. 146; *Farmers' Loan & Trust Co.* v. *N. Y. & N. Ry. Co.*, 95 App. Div. 622.)

*Morgan J. O'Brien* and *Edwin J. Freedman* for Bernard F. Coleman, respondent. All questions raised by the pleadings were disposed of by this court in its former decision except as indicated therein. (*Rudiger* v. *Coleman*, 199 N. Y. 342.) The interlocutory judgment was disposed of by appeal to the Appellate Division and considered by the Court of Appeals in another phase of this litigation. (*Rudiger* v. *Coleman*, 148 App. Div. 682; 206 N. Y. 412.) The power of the Appellate Division to grant restitution is discretionary, and when the discretion has been exercised its decision is final and the Court of Appeals cannot review the resulting order in the absence of a certificate. (*Merriam* v. *W. & P. Co.*, 155 N. Y. 136; *Matter of Bisch*, 202 N. Y. 552; *Van Arsdale* v. *King*, 155 N. Y. 325; *Matter of Attorney-General*, 155 N. Y. 411, 445; *Matter of Small*, 158 N. Y. 128.)

*Charles Haldane* for Jules Breuchaud, respondent.

Cardozo, J. The plaintiffs in the year 1899 were the owners of a tract of land of about one hundred and thirty acres in Westchester county, known as the Field farm, and had a contract for the purchase of another

tract of about fifteen acres known as the Horton farm. In June, 1899, they made a contract to convey to the defendants their rights in the two farms. The defendants were to assume a mortgage on the Field farm, and pay $3,000 in cash. They were also to assume the performance of the contract for the Horton farm. Within six months after the delivery of the deed and the assignment of the contract, they were to form a corporation, known as the Quarrying Company, for the purpose of quarrying and selling granite, with the plaintiffs and the defendants as incorporators. The corporation was to receive a conveyance of the Field farm, and in payment thereof was to issue its stock, forty per cent to the plaintiffs and sixty per cent to the defendants. The corporation was also to have the right to receive a conveyance of the Horton farm upon payment to the defendants of any moneys expended by them in completing the purchase. Until the corporation was formed, the defendants were to have the right to take out of the farms for their own use so much stone as might be necessary for the erection of the New Croton dam. After the conveyance to the corporation, a like right was to be reserved to them. Stone in excess of those needs was to belong to the corporation, which would quarry it for the stockholders. If there was a lease of any part of the land which the plaintiffs were conveying, the rent was to be divided, forty per cent to them and sixty per cent to the defendants, until the conveyance to the corporation, which would then receive the whole. The voluminous contract covers many other details. The foregoing summary suffices for an understanding of this controversy.

The deed and the assignment of contract were delivered in June, 1899. The defendants took out the granite necessary for the dam, and completed its construction. They never formed the corporation which was to take and hold the title. The terms of incorporation had not been settled in the contract, and the plaintiffs and the defend-

ants, the incorporators, were unable to agree about them. In July, 1904, five years after the deed and the assignment, the plaintiffs brought this action. They alleged that the defendants had wasted the lands, and had taken granite for purposes other than the erection of the dam. They also alleged that through the refusal or failure of the defendants to form a corporation, the contract had become abortive and incapable of fulfilment. Judgment was demanded for an accounting, and a reconveyance of the land. There were two trials, but we need concern ourselves only with the second, which took place in October, 1906. The trial justice found that granite had been taken for the dam and nothing else; that the defendants had been guilty of no waste; and though he also found that there had been no accounting for the rents of buildings, and that there had been an inability to agree upon the terms of incorporation, he refused any relief to the plaintiffs and dismissed the complaint. After affirmance at the Appellate Division, there was an appeal to this court (*Rudiger* v. *Coleman*, 199 N. Y. 342, 346, decided in October, 1910). We held that the findings acquitting the defendants of waste, since they had been unanimously approved by the Appellate Division, were conclusive upon us. We held, however, that upon the failure to form a corporation and the consequent failure of the entire scheme of the contract, the defendants held the title as trustees for the plaintiffs, and were under a duty to reconvey it. We held also that there should be an accounting for the rents received from buildings. We, therefore, directed that " the judgment of the Appellate Division should be reversed and the judgment of the Special Term modified so as to direct a reconveyance by the defendants to the plaintiffs of the Field farm; and a reassignment of the contract for the fifteen acres of the Horton farm upon condition that the plaintiffs reimburse the defendants for any payments they have made upon the contract for that part of the Horton farm," and that " the judgment should

be further modified so as to direct an accounting for rents collected by the defendants." The remittitur directed reversal of the judgment of the Appellate Division, and modification of that of the Special Term, in accordance with the opinion.

It is at this point that the proceedings, now brought up for review, begin. The defendants moved at Special Term for an order that the judgment of the Court of Appeals be made the judgment of the Supreme Court. They said in their affidavits that it was impossible to make literal compliance with a decree of reconveyance for the reason that during the pendency of the appeals, part of the land had been condemned by the city of New York. The plaintiffs' answering affidavits admitted these changes, and asserted others. Even that part of the land to which title had been retained was said to be no longer intact as it stood in October, 1906. The charge was made that during the pendency of the appeals the defendants, having completed the dam, had made sales of granite for other purposes, and the charge was supported by the production of documents alleged to be copies of the defendants' contracts. While this motion for judgment was pending undetermined, the plaintiffs made a cross motion, submitted to the same judge, which they styled a petition for restitution, but which, however they chose to style it, was in reality an application, at the foot of the decree, to adjust to changed conditions the form and measure of relief. The result was the entry at Special Term of a new interlocutory judgment. There can be no doubt that in some of its provisions it went too far. The defendants could not properly be compelled to litigate anew the charge that in October, 1906, or at any earlier date, they had wasted the plaintiffs' land. They had already been adjudged blameless; the adjudication was untouched by our judgment of modification; and the controversy was no longer open. But there were other provisions of the new judgment which did not go back of

the time covered by any past adjudication. The defendants had already paid to the plaintiffs forty per cent of the moneys collected for parcels condemned by the city of New York during the pendency of the appeals. The new judgment directed them to pay to the plaintiffs the remaining sixty per cent with interest, less attorneys' fees and other disbursements. The defendants under cover of the appeals had taken or sold granite and other products of the farm in violation of their contract. So, at least, the plaintiffs charged, without denial by the defendants, who contented themselves with a protest that the charges were irrelevant. The new judgment directed an accounting in respect of the use of the farms from October, 1906, to the date of reconveyance. From that judgment the defendants appealed to the Appellate Division. The view was there taken that the Special Term was without power to adapt to changed condition the relief awarded by this court, and that its duty was to repeat, with literal fidelity, the terms of our remittitur (*Rudiger* v. *Coleman*, 148 App. Div. 682). The provision substituting the proceeds of condemnation for the parcels condemned disappeared from the judgment. The provision for an accounting for the period following October, 1906, also disappeared. All that was left was a general direction that the judgment be " modified to conform to the determination of the Court of Appeals," and that " the order of reference contained in the judgment " be modified " so as to direct the referee thereby appointed to take and state the account between the parties of the rents referred to in the opinion of the Court of Appeals and the remittitur from that court, and report the testimony taken with his opinion thereon to the court," and that " as so modified " said judgment be " affirmed with costs to the appellants." The referee thus appointed to take and state the account of rents divided the rents into two periods, those collected before October, 1906, and those collected since that time down to the date of the reconveyance. He held that in both

periods, forty per cent and no more belonged to the plaintiffs, and that the residue, sixty per cent, might be retained by the defendants. Upon this report, final judgment was entered, the defendants being permitted to set off against the rents the moneys expended in the purchase of the Horton farm with interest from June 16, 1911, the date of reconveyance. That judgment was modified at the Appellate Division in details which, for the moment, it is unnecessary to go into, and as modified affirmed. Some of the interlocutory orders and judgments necessarily affected the final judgment (Code Civ. Pro. sec. 1316). The plaintiffs come to this court with notice of intention to review them all.

(1) We think the form and measure of relief should have been adjusted to the changed conditions.

When, in October, 1910, we modified the judgment of the Special Term, entered after a trial in October, 1906, we knew nothing of intervening changes. The judgment as we modified it was the judgment which the Special Term ought to have pronounced upon the record then before it. Our decision spoke as of that time. We found the land intact in October, 1906, and we held that the trustees were then under a duty to return it to the plaintiffs. That adjudication was a finality. The Supreme Court, in entering judgment on our remittitur, was powerless to change it (*Sayre* v. *State of New York*, 128 N. Y. 622). But as a result of new conditions, the relief to which we held that the plaintiffs were entitled in October, 1906, was no longer complete or effective in October, 1910. We could not know when we ordered the trustees to reconvey, that part of the subject-matter of the conveyance had been sold and that part of it had been wasted. In adapting the relief to the exigencies of new conditions, the Supreme Court was not attempting to overrule our judgment or review it. Such adaptation is not nullification, but enforcement. Nor was the jurisdiction which the court was asked to exercise a new one. By the settled

practice of Chancery, a supplemental bill might be filed, even after decree, to give effect to the decree rendered, and to secure its fruits to the successful party (Story's Equity Pleading, secs. 338, 345, 351; Daniell's Chancery Practice [8th ed.], pp. 713, 1334, 1335; 2 Barbour's Chancery Practice, pp. 62, 63; Mitford, Equity Pleading, 59; *Root* v. *Woolworth*, 150 U. S. 401, 410, 411; *Thompson* v. *Maxwell*, 95 U. S. 391, 399; *Shields* v. *Thomas*, 18 How. [U. S.] 253, 262; *O'Hara* v. *Shepherd*, 3 Md. Ch. 306; *Austin* v. *Hayden*, 190 Mich. 528, 537). Such a bill, at least when limited to the same parties, did not initiate an independent suit, but was looked upon as a continuation of the original suit, and as ancillary thereto (2 Barb. Ch. Pr. 71, 78, 79; *Shaw* v. *Bill*, 95 U. S. 10, 14). The right to file it was undoubted when the decree was menaced in its efficacy by force of changing circumstances (Daniell, Barbour, Story, *supra*). The ancient jurisdiction of Chancery resides in the Supreme Court to-day.

We think that in the exercise of this power of adaptation, the proceeds of lands sold should have been declared a substitute for the lands themselves. In ordering a conveyance, we assumed that it was possible to convey. The defendants admit that during the pendency of the appeals, part of the land has been condemned and converted into money. Their duty is to pay the money, since they can no longer return the land (*Valentine* v. *Richardt*, 126 N. Y. 272). It is no answer to say that forty per cent of the money has been accepted by the plaintiffs. The acceptance was without prejudice to the right to receive the residue. The residue, with interest, is still due, but the defendants should be credited with the expenses of the proceedings to condemn.

We think also that in the exercise of the same power of adaptation, the defendants should have been required to account for their use of the plaintiffs' land between October, 1906, and the date of reconveyance. A decree for the reconveyance of a mine is not satisfied if between

decree and reconveyance the mine has been exhausted. A decree for the return of a quarry is not satisfied when the land is returned with the stone extracted. The plaintiffs charged, and the defendants did not deny, that stone and other products had been taken from the land during the pendency of the appeals. The defendants were not in the position of trespassers, whose wrongs are to be corrected through an action at law. They were trustees, subject, if their trust powers had been misused, to the discipline and restraint of a court of equity. We see no reason why equity should not carry down the accounting to the date of reconveyance. No form of supplemental relief is commoner.

We hold, therefore, that in attempting to fit the remedy to new conditions, the plaintiffs did not ask for anything that involved an unlawful interference with the judgment of this court. No doubt it is easy to pick flaws in the form of their petition for supplemental relief, which ought, in regular practice, to have adhered more closely to the framework of a supplemental bill. If the defendants had any objection to offer on that score, they should have made it at the hearing. They made none, but followed on their side a practice equally informal. They too were applicants for supplemental relief. They asked to be relieved from literal compliance with the decree in so far as compliance had become impossible because of intervening sales. They asked also that they substitute a reconveyance of the Horton farm for a reassignment of the contract, which became merged in the deed when title was perfected. All this they showed not by supplemental complaint nor by petition, but by affidavits submitted on their motion for judgment on the remittitur. In effect, therefore, their position is that the court might adapt its relief to the exigencies of new conditions established by them, but must close its ears to the changes asserted by their adversaries. We think they could not limit so narrowly the scope of the inquiry. They had

opened the door, and disregarding adherence on their side to the forms of strict procedure, had asked in effect that the decree be recast in conformity with changed conditions. The plaintiffs had retorted by alleging other changes. Inquiry could not be checked until the changes had been explored, and the decree of the past had been harmonized with the conditions of the present.

The suggestion is made that supplemental relief in the principal action rather than in a new one is not to be demanded as of right, but may be granted or withheld in the exercise of discretion. We do not stop to inquire whether that is invariably so. Discretion "must be regulated upon grounds that will make it judicial" (*Haberman* v. *Baker*, 128 N. Y. 253, 256; quoting *White* v. *Damon*, 7 Ves. 35). There is support for the view that supplemental relief, where the changed conditions are brought without laches to the notice of the court, and above all where they are either conceded or at all events undenied, may not always be discretionary (*Park & Sons Co.* v. *Hubbard*, 198 N. Y. 136, 139; *Halfmoon Bridge Co.* v. *Canal Board*, 213 N. Y. 160, 165). In this instance, the Special Term exercised any discretion that it had in favor of the plaintiffs, and the Appellate Division reversed upon the ground of want of power. If the case is governed by section 1338 of the Code of Civil Procedure, reversal because of error of law is a presumption from the form of the order (*Moore* v. *Vulcanite Portland Cement Co.*, 220 N. Y. 320). If it is not governed by that section, we may refer to the opinion (*Matter of Haydorn* v. *Carroll*, 225 N. Y. 85, 89), and then the same conclusion follows. The opinion clearly shows that supplemental relief was refused on the ground that the Supreme Court was acting without power when it varied, in the face of changed conditions, the relief awarded by this court (*Rudiger* v. *Coleman*, 148 App. Div. 682). The inference that there was no exercise of discretion becomes inevitable when we reflect that the Appellate Division disregarded changes that were

conceded by all the parties, and wiped out the provision substituting the money for the land. One sentence in the opinion is quoted as suggesting a different view: " Whatever right the Supreme Court would have to reopen the case, it is not authorized, we believe, to sanction a reversal of the Court of Appeals by the Special Term." We cannot be sure whether reopening the case was understood to be equivalent to supplemental relief in aid of an unopened decree. If so, then the fact was overlooked that in the record under review there was a petition for that very relief. The Appellate Division did not hold that relief should be refused on the ground that the power to reopen had been indiscreetly exercised. It held that the power to reopen had not been exercised at all. Something different was thought to have been done, and that something a revision and modification of the judgment of this court. We reach this conclusion the more readily because we are reluctant to believe that the Appellate Division would have been willing, on the basis of some supposed discretion, to relegate these parties to another lawsuit, after all their years of litigation. The litigation may be ended in one action. The voice of discretion has not yet said that justice or expediency requires us to dispose of it in two.

(2) We think there has been error also in the division of the rents of buildings.

The referee who stated the accounts held that the plaintiffs were entitled to forty per cent of the rents of the Field and Horton farms, and that the residue might be retained by the defendants. The Appellate Division refused to concede to the plaintiffs any part of the Horton rents, but sustained the ruling of the referee that they must be limited to forty per cent of the Field rents.

The Field farm will be considered first. There is a provision in the contract that until the conveyance to the corporation, rents of this farm shall be divided in the proportion of forty per cent to the plaintiffs and sixty per

cent to the defendants. We have no doubt of the propriety of that method of division while the contract was in force. There came a time, however, when there was an abandonment of the scheme, and the defendants, holding the land upon a trust which had failed, were charged with a duty to return it to the plaintiffs. We have held that this time had been reached in October, 1906, if not before. The defendants, if they had done their duty, would then have returned the land to the plaintiffs, and the court, if it had entered the proper judgment, would have required them to return it. From that time, the plaintiffs were entitled in equity to one hundred per cent of the rents of the Field farm. The trustees could not profit by delay in the execution of their trust. We find in the report the necessary data for the computation of the award, and we hold that the sum of $2,668.89 should be added to the judgment.

The rents of the Horton farm stand on a different basis. The contract left it uncertain whether the defendants would keep that farm or part with it. The corporation, when formed, was to have an option to acquire it, but only on payment of the cost. When the corporation was abandoned, the plaintiffs under our decision got a like right, subject, however, to a like condition. Payment or at least tender was necessary before the duty to reconvey arose. The plaintiffs, like the corporation, might elect to reject the purchase, and leave the defendants' title absolute. We find nothing in the contract to justify the claim that the plaintiffs or the corporation were to have any interest in rents collected until an election was announced and tender made. The defendants were under a duty in the interval to take no stone except for the erection of the dam, for that was a provision of the contract. They were under a duty in the. interval to refrain from acts of waste. But while the option was unexercised, the rents from buildings were their own.

We may add that it would not help the plaintiffs if we

were to allow them forty per cent of the Horton rents, which in any reasonable view of the situation would be the limit of their right. They would then be chargeable during a like period with interest on the cost, which they have thus far escaped except from the date of reconveyance. The added interest would be more than an offset to the added rents. It follows that the error, if there has been any, in the allotment of these rents, is not a reason for reversal. The defendants have not appealed, and the plaintiffs are not prejudiced.

Our conclusion, therefore, is that the judgment as entered at the Appellate Division should be modified as follows:

1. The plaintiffs should recover from the defendants the proceeds of the lands appropriated by the city of New York with interest thereon, the defendants to be credited, however, with the part payments already made and with their reasonable expenses in the proceedings to condemn, and a referee should be appointed to report the balance due.

2. The defendants should be declared accountable to the plaintiffs for the use of the lands in controversy from the date of the trial in October, 1906, to the date of reconveyance, and for the profits realized therefrom, other than the rents of buildings, and a referee should be appointed to take and state said accounts.

3. The sum of $2,668.89 should be added to the award already made to the plaintiffs for rents of the Field farm.

The judgment, as so modified, should be affirmed with costs to the appellants.

HISCOCK, Ch. J., CHASE, HOGAN, McLAUGHLIN and ELKUS, JJ., concur; CRANE, J., not sitting.

Judgment affirmed.