■ In the Matter of FRANK X. ALTIMARI, Respondent, v. WILLIAM D. MEISSER et al., Constituting the Board of Elections of the County of Nassau, et al., Respondents and DOROTHY KARRENBERG, Intervenor-Appellant. In the Matter of JULIUS R. LIPPMAN, Respondent, v. COMMISSIONERS OF ELECTION OF THE COUNTY OF NASSAU et al., Respondents, and DOROTHY KARRENBERG, Intervenor-Appellant.— In two proceedings under the Election Law (§ 330) for the judicial recanvass, review and recount of all the absentee and military ballots cast in the last general election for the office of District Court Judge of the County of Nassau, in the Third Assembly District, one proceeding having been brought by Frank X. Altimari, the candidate of the Republican party, and the other proceeding having been brought by Julius R. Lippman, the candidate of the Democratic party, a voter, Dorothy Karrenberg, appeals from an order of the Supreme Court, Nassau County, entered January 20, 1965, which denied her motion for leave to intervene in the proceedings to determine whether her civilian absentee ballot should be counted. Order affirmed, without costs. It appears that this voter's absentee ballot was returned by her to the Board of Elections, and that the board erroneously delivered it to the 65th Election District of the First Assembly District instead of to the 65th Election District of the Third Assembly District. Testimony with respect to said ballot was given on December 11, 1964 in the main proceedings, and the Special Term ruled that the ballot should not be counted. On December 17, 1964 judgments were entered determining the main proceedings. There were subsequent appeals to this court by the rival candidates, and a further appeal to the Court of Appeals. In none of these appeals was there any question raised by any party as to the propriety of the Special Term's ruling with respect to this voter's ballot. However, a week after the determiniation by the Court of Appeals, this voter, in a renewed effort to have her ballot counted, moved at Special Term for leave to intervene in these proceedings which are now being conducted pursuant to the remittitur of the Court of Appeals. In our opinion, not only is this voter's application untimely (Election Law, § 330, subd. 5), but it would be improper to permit every voter to make piecemeal applications, with appeals incidental thereto, after the question as to the voter's ballot had been specifically brought to the attention of the Special Term in the proceedings between the rival candidates and a determination made with respect thereto from which no appeal was taken. Beldock, P. J., Ughetta, Rabin, Hopkins and Benjamin, JJ., concur.

■ In the Matter of FRANK X. ALTIMARI, Appellant, v. WILLIAM D. MEISSER et al., Constituting the Board of Elections of the County of Nassau, et al., Respondents. In the Matter of JULIUS R. LIPPMAN, Respondent, v. COMMISSIONERS OF ELECTION OF THE COUNTY OF NASSAU et al., Respondents, and FRANK X. ALTIMARI, Appellant.— In two proceedings under the Election Law (§ 330) for the judicial recanvass, review and recount of all the absentee and military ballots cast in the last general election for the office of District Court Judge of the County of Nassau, in the Third Assembly District,

one proceeding having been brought by Frank X. Altimari, the candidate of the Republican party, and the other proceeding having been brought by Julius R. Lippman, the candidate of the Democratic party, the candidate Altimari appeals from the following judgment and order of the Supreme Court, Nassau County: (1) a judgment, entered January 22, 1965 after a prior appeal and the hearing held pursuant to the Court of Appeals' remittitur thereon, dated January 7, 1965 [and amended February 11, 1965], which judgment declared that the two military ballots numbered 33-1 and 33-2 are valid and constitute two additional votes for candidate Lippman and that there is a tie vote for the said office, and directed that the Board of Canvassers amend its statement of canvass and the Board of Elections certify the results accordingly; and (2) an order entered January 20, 1965, which denied the candidate Altimari's motion to reopen the proceedings so as to permit the introduction of newly discovered evidence with respect to the residence and qualification of the two voters who cast and mailed the said military ballots 33-1 and 33-2. Judgment reversed on the law and in the exercise of discretion, without costs, and proceedings remitted to Special Term to take plenary proof with respect to the eligibility and qualifications to vote of the persons who cast and mailed the two military ballots numbered 33-1 and 33-2; and for a determination as to the validity of said ballots based upon such proof. No questions of fact were considered. Order reversed on the law and in the exercise of discretion, without costs, and motion granted. On this appeal we are required to determine the permissible latitude of the Special Term in taking proof under the Court of Appeals' remittitur and remission on the prior appeal. Such latitude depends: (a) upon the construction to be given to the Court of Appeals' original decision and remittitur, read in the light of its subsequent decision and its subsequent amendment of the original remittitur (*Matter of Altimari* v. *Meisser*, 15 N Y 2d 686; remittitur amd. 15 N Y 2d 686); and (b) upon the discretion vested in the Special Term and in this court to accept newly discovered evidence in the interests of justice. The two absentee voters who cast the military ballots in question are husband and wife. The husband is presently a captain in the United States Air Force and is stationed in Newfoundland, where he resides with his wife and two children. Prior to the husband's entry into military service and prior to his marriage, he resided with his parents in their house in Great Neck, Nassau County. In December, 1962, after the husband had entered military service, the parents sold their house and moved to Connecticut. Based upon proof that the parents had sold their house and no longer lived in the voting district, the election inspectors refused to open and count these two military ballots. They did so on the ground that the son, despite his entry into military service, lost his voting residence when his parents sold the house where he had lived with them and moved to Connecticut. The Special Term and this court thereafter sustained the election inspectors' determination and held that, for the reason stated, such ballots should remain unopened and uncounted. However, based upon the same proof, the Court of Appeals reached the contrary conclusion. It held "that the grounds on which the Election Inspectors refused to open these ballots were insufficient". At the same time the Court of Appeals also declared that: "In view of the limitation of our jurisdiction, however, we remit the proceeding to Special Term to pass in the *first instance* on the validity of the two ballots" in question, numbered 33-1 and 33-2. The remittitur was in accord with this decision. Thereafter, on February 11, 1965, while this appeal was still pending in this court, the Court of Appeals amended its remittitur to include the follow-

674

ing recital: "This court held that the removal of the soldier's parents did not, *in and of itself*, deprive the soldier and his wife of the right to vote in the district in which he had previously lived with his parents." (Emphasis added.) On January 14, 1965, at the hearing held pursuant to the original remittitur of January 7, 1965 (and prior to its amendment on February 11, 1965), and again thereafter by a separate formal written motion based on supporting affidavits, the candidate Altimari attempted to offer proof of the following alleged newly discovered evidence: (1) In 1958, the soldier, then unmarried, lived with his parents in a one-family house in Great Neck, Nassau County. In that year he joined the United States Air Force in Texas; thereafter he received his commission as a captain and was assigned to an air force base in Topeka, Kansas. Here he met and in 1960 married his wife, who had been a resident of California. After the marriage he and his wife established their first matrimonial residence at 3549 Devon Street in Topeka, Kansas. (2) In December, 1962 the captain's parents sold their one-family house in Great Neck and purchased a one-family house in Connecticut, where they have resided since. Thereafter the captain was transferred to the air force base at Newfoundland, but for several weeks thereafter he and his wife lived with his parents in Connecticut until he was able to find living quarters near the base in Newfoundland. (3) After his marriage the captain advised the Air Force that his home address was in Connecticut; he registered his automobile from his parents' Connecticut address; he received his personal mail at the Connecticut address; he considered such address to be his home address; he filed his Federal income tax return from that address; he did not consider himself a resident of New York; and both he and his wife attempted to register to vote in Connecticut. The Special Term Justice summarily rejected these offers of proof and denied such motion on the ground that under the remittitur: (a) he was required to limit the proof to the physical presentation and examination of the two disputed ballots; and (b) he was foreclosed from taking proof of any additional facts which might tend to establish the ineligibility or disqualification of the two voters by reason of their own acts — acts which were independent of the parents' removal. Unquestionably this newly discovered evidence would have an important bearing (cf. *Matter of Seld* [*Seigfred*], 268 App. Div. 235, 237); and, ordinarily, it would have to be considered together with any other proof which may be adduced, in order to make a proper determination as to the eligibility of these two voters and as to the validity of the ballots which they attempted to cast. The principal issue now, therefore, is whether this newly discovered evidence has been irrevocably barred from consideration by the remittitur of the Court of Appeals. In our opinion, the Court of Appeals remittitur was never intended to and does not bar the acceptance of this newly discovered evidence. Particularly as amended, the remittitur makes abundantly clear: (1) that the issue tendered to and decided by the Court of Appeals was limited to whether "the removal of the soldier's parents, in and of itself, deprived the soldier and his wife of the right to vote in the district in which he had previously lived with his parents;" (2) that this was the *only* issue decided by it; and (3) that its remission to the Special Term left open for determination by the Special Term *in the first instance* every other issue affecting the validity of the ballots sought to be cast by the soldier and his wife. Obviously, their eligibility to vote is a basic and integral prerequisite which affects the validity of their ballots. Of course, upon the prior appeal the Court of Appeals could not have given any consideration to the effect upon the right of the soldier and his wife to vote in Nassau County by reason of their own later conduct in establish-

ing a residence or domicile elsewhere; that question was then neither involved nor raised. Indeed, it could not have been involved or raised because the record was then devoid of any facts showing the personal acts of the soldier and his wife subsequent to the removal of his parents; the proof thereof is claimed to have been first discovered on January 10, 1965 — after the Court of Appeals' original decision and remittitur on January 7, 1965. Presumably, on the application to the Court of Appeals to amend its remittitur these alleged newly discovered facts were submitted to it. Undoubtedly, it was these facts which motivated the amendment of the remittitur so as to make clear that the only question decided by the Court of Appeals was whether the removal by the soldier's *parents* from their home in Great Neck had deprived the soldier and his wife of the right to vote in Nassau County. From this clarification and amendment of the remittitur the only fair inference is that any other question which may arise or which may be presented is open for the lower court's uninhibited determination. It is well settled that the remittitur must be construed in the light of the issues actually litigated and decided. Upon the remission for further proceedings it is only such *specific* issues which are barred from being tried *de novo*. With respect to new issues and new facts arising upon the subsequent trial held pursuant to the remittitur, the Court of Appeals' prior decision cannot, in the nature of things, be deemed binding or conclusive. It is binding only "so long as the facts remain the same" (*Matter of Laudy,* 161 N. Y. 429, 434); it is binding only "where the same question arises upon the same facts;" it is not binding where "there are new facts which subvert the ground of the former judgment and change the character or measure of relief to which the plaintiff is entitled" (*Worrall* v. *Munn,* 53 N. Y. 185, 187–188). It is also well settled that, while upon the remission the Special Term is powerless to change the remittitur, nevertheless, in order to avoid an obviously unjust result it may mold its procedure and adapt its relief to the exigencies of any new facts or conditions which were not before the Court of Appeals when it made its original determination and entered its remittitur (cf. *Rudiger* v. *Coleman,* 228 N. Y. 225, 233). The Special Term, in rejecting the proffered evidence, relied on three cases (*Lipton* v. *Bruce,* 4 N Y 2d 975; *Enthoven* v. *Enthoven,* 259 App. Div. 231, 233; *United States* v. *Pink,* 36 N. Y. S. 2d 961). In our opinion, the court in these cases did not make any contrary determination. We therefore conclude that under the remittitur the Special Term was authorized to take all the proof which was offered by any party affecting the eligibility of the soldier and his wife to vote in Nassau County at the last general election; and that, on the basis of the plenary proof adduced, the Special Term was authorized "to pass in the first instance" upon such eligibility. In any event, even if the remittitur had not authorized the Special Term to accept the newly discovered evidence, we believe that under the circumstances here the Special Term was clearly empowered, in the proper exercise of its discretion, to accept such evidence (cf. *Rudiger* v. *Coleman,* 228 N. Y. 225, 233, *supra*). The Special Term, however, acting on the erroneous assumption that it was without power, refused to exercise its discretion. Since we are vested with a similar discretion, we deem it appropriate, in the exercise of our discretion, to now direct that the newly discovered evidence be accepted. In proceedings such as these, which affect the public interest and a public office, the court should unhesitatingly exercise its discretion in favor of accepting the evidence. It is material to the issue of the validity of the challenged ballots. And appellant's failure to produce it on the original hearings is understandable and excusable, since the election inspectors had excluded the ballots on the

ground that these two voters were disqualified solely because of the parents removal from Nassau County. There was no reason then for appellant to attempt to add cumulative grounds for the disqualification of these voters. The propriety of appellant's judgment in relying on the election inspectors' asserted ground for disqualification may be judged by the fact that thereafter both the Special Term and this court held such ground to be valid. The need for the additional ground first arose after the Court of Appeals' original decision and remittitur of January 7, 1965, when that court held invalid the ground upon which the election inspectors had excluded the ballots. Under the circumstances, therefore, when additional material evidence to support another ground is now claimed to be at hand; when such evidence was obtained promptly after the Court of Appeals' decision; and when such evidence was offered at the very inception of the new trial or hearing — before any decision had been rendered or judgment entered, it would be a grave injustice to summarily reject the evidence. Neither the original nor the amended remittitur mandates such an unjust result; nor do they serve to immobilize the exercise of discretion by the Special Term or by this court to avoid that result. It may be noted that the right to exercise such discretion (during trial and also after trial, decision and even judgment) is conferred upon the court by statute in the broadest terms (cf. CPLR 4402, 4404, subd. [b]). The statute, however, merely confirms and emphasizes the basic and inherent power of the court to act in the interests of justice. It is well established that the exercise of the power to accept newly discovered evidence is "not governed by any well defined rules" but depends "in a great degree upon the peculiar circumstances of each case" and upon "whether substantial justice has been done" (*Barrett* v. *Third Ave. R. R. Co.*, 45 N. Y. 628, 632). Both on the law and in the exercise of discretion, the judgment and order appealed from should be reversed and the proceedings remitted to Special Term. Beldock, P. J., Rabin, Hopkins and Benjamin, JJ., concur; Ughetta, J., dissents and votes to affirm the judgment and order, with the following memorandum: On the initial hearing held at Special Term, the parties were afforded a full opportunity to argue the merits of the objection sustained by the inspectors of election to these military ballots. Special Term sustained the objection. This court affirmed, one Justice dissenting. The dissenting memorandum stated that the grounds for the objection were insufficient and that "these two unopened ballots should be opened and their validity determined." The Court of Appeals held that "the grounds on which the Election Inspectors refused to open these ballots were insufficient." In view of the limitation of its jurisdiction, however, the Court of Appeals remitted the proceeding to Special Term "to pass in the first instance on the validity of the two ballots numbered 33–1 and 33–2." What the Court of Appeals intended by its remission is the subject of this appeal. I agree with Special Term that the remittitur meant only that the physical ballots should be examined to see that they were properly marked and not subject to objection as to form; that any question as to the capacity of these voters to vote, as distinguished from whether they executed their ballots properly, was finally determined by the Court of Appeals and is now foreclosed. The majority opinion finds special significance in the fact that the proceeding was remitted to Special Term to pass on the validity of these ballots "in the first instance". I fail to see why. The proceeding was remitted to Special Term to pass on the validity of these ballots "in the first instance" because it is the Supreme Court alone which possesses the statutory jurisdiction "to summarily determine any question of law or fact"

arising out of election disputes (Election Law, § 330). The Court of Appeals reviewed the question of law litigated at Special Term and reviewed in this court; that is, whether the objection by the election inspectors was properly sustained. Beyond dispute, the Court of Appeals held that the objection should not have been sustained and that the persons who cast these two military ballots should have been permitted to vote. Obviously, however, since the two ballot envelopes had never been opened, no question as to the proper execution of the ballots was or could have been before either this court or the Court of Appeals. The only court which had jurisdiction to determine " in the first instance " whether, as a matter of law or fact, the ballots had been properly executed was the Supreme Court at Special Term. The majority find it "abundantly clear" from the remittitur, as amended, that the Court of Appeals left open for determination by Special Term every other issue affecting the validity of the ballots, except that the removal of the parents from the district was not sufficient to bar this military voter and his wife from casting their ballots. In my opinion, the amended remittitur of the Court of Appeals merely expresses what was necessarily to be inferred from the original remittitur; that is, that the removal of the parents from the district was not sufficient to support an objection to these ballots. Emphasizing the words " in and of itself " in the amended remittitur does not convert this explicit statement of its prior holding into a wide-ranging authorization by the Court of Appeals to litigate again whether the inspectors should have sustained the objection to these ballots. The public interest demands that election disputes be settled without delay. A public office which the People voted to fill lies vacant. In order to facilitate the resolution of election disputes, section 330 of the Election Law provides for a summary judicial review of the questions of law and fact which have arisen. In this proceeding, one of the questions raised was whether the objection to these ballots was properly sustained. The Court of Appeals held that it was not. What appellant now asks, and this court permits him, is an opportunity to raise the question whether the objection would have been proper had the inspector of elections known certain additional facts. The unalterable fact of the matter, however, is that the inspectors did not know of these additional facts and they can have no bearing on the propriety of the objection that was made. Appellant was given a full opportunity on the initial hearing to adduce evidence that the objection was well taken. The majority excuse his failure to do so on the ground that the election inspectors sustained the objection on insufficient grounds and appellant was entitled, therefore, to rely on the sufficiency of those grounds. Many litigants have rested their cases on facts which they and lower courts deemed sufficient only to discover that a higher court disagreed. Such reliance does not entitle the litigant to another opportunity to try out the issue. All of the information which appellant now seeks to offer existed and could have been discovered and brought to the attention of Special Term on the original hearing. Appellant's brief admits that investigation as to the residence of these voters was made only after the Court of Appeals remitted the proceeding to Special Term. If that is so, obviously there was no reliance on the position taken by Special Term which lulled appellant into not offering further proof on the original hearing. Courts do not exercise their discretion to reopen proceedings at the request of litigants who failed to seek out material evidence which existed and could have been discovered with reasonable diligence (CPLR 5015, subd. [a], par. 2; cf. *Fliegel* v. *City of New York*, 280 App. Div. 898; *Travitzky* v. *Schamroth*, 277 App. Div. 1018). I would affirm.