C. Monteith Gilpin et al., Appellants-Respondents, and Nathan W. Shapiro et al., Respondents, *v.* Mutual Life Insurance Company of New York, Respondent-Appellant, and Manufacturers Trust Company, Respondent.

Mutual Life Insurance Company of New York, Landlord, Appellant-Respondent, *v.* Vincent Fiore et al., Tenants, Respondents-Appellants, and Nathan W. Shapiro et al., Tenants, Respondents.

Argued February 28, 1949; decided May 26, 1949.

*John F. X. Finn* and *Norman C. Mendes* for tenants, appellants and respondents. I. When the question presented upon an appeal involving the interpretation of emergency rent laws has, by lapse of time, laches of the appellant, and the changed course of fluid events, become academic and moot, the court will refuse to decide the abstract question and will dismiss the appeal. (*Delavan* v. *New York, N. H. & H. R. R. Co.*, 216 N. Y. 359; *Matter of Costello* [*O'Leary*], 268 App. Div. 223; *Matter of Norton*, 158 N. Y. 130; *Matter of Lyon Co.* v. *Morris*, 261 N. Y. 497; *Bryant* v. *Thompson*, 128 N. Y. 426; *Public Nat. Bank* v. *National City Bank*, 261 N. Y. 316; *Matter of Grossman, Inc.*, v. *Staff*, 252 App. Div. 886.) II. Under the Emergency Rent Control Laws (L. 1945, ch. 3; L. 1945, chs. 314, 315; L. 1946, ch. 273, § 8, subd. [c]) tenants may not be dispossessed upon any theory of an immediate intention to demolish an old building and erect a new one unless the " plans for such construction have been approved by the proper authorities, if such approval is required by law "; and in the case at bar the proper authorities have not approved any plans of the landlord or any plans of anyone other than the now abandoned plans of the trust company. (*Quaker Oats Co.* v. *City of New York*, 295 N. Y. 527; *Russell Hardware & Implement Mfg. Co.* v. *Utica Drop Forge & Tool Co.*, 195 N. Y. 54; *Smith* v. *Bouton*, 221 App. Div. 317; *Peck* v. *Goodberlett*, 109 N. Y. 180.) III. Under the Emergency Rent Control Laws (L. 1945, ch. 314, § 8, subd. [c], as amd.) there are three reasons why plaintiffs may not be evicted or removed, inasmuch as this is not a case

in which " the landlord " seeks in good faith to recover possession for the " immediate purpose " of demolishing the building or other rental area with the intention of constructing a new building. And the emergency statute abolished holdover tenancies, so that in the circumstances presented by the case at bar, dispossess proceedings against statutory tenants such as appellants must be dismissed, inasmuch as the Civil Practice Act provides that only holdovers may be evicted. (*Blitzkrieg Amusement Corp.* v. *Rubinstein Bros. Drinks,* 184 Misc. 975; *People ex rel. Durham Realty Corp.* v. *LaFetra,* 230 N. Y. 429.) IV. The contemplated demolition and construction was not to be done by " the landlord " but rather by the trust company which was not and is not the landlord; and the landlord is merely endeavoring to substitute one tenant for a group of existing tenants, which the statute does not authorize. (*Tishman Realty & Constr. Co.* v. *Wolf,* 185 Misc. 317; *Trade Accessories* v. *Bellet,* 184 Misc. 962; *Straus-Duparquet* v. *Moglen,* 185 Misc. 831; *Cannon* v. *Gordon,* 181 Misc. 950; *Ostrowe* v. *Lee,* 256 N. Y. 36.) V. Possession was not and is not sought for the " immediate " purpose of demolishing and constructing. VI. There are no holdover tenancies during the period of the emergency defined in the Emergency Rent Control Laws; and the Civil Practice Act does not permit the dispossession of statutory tenants. Since the proof establishes that the plaintiffs are emergency tenants and not holdover tenants, the dispossess proceedings instituted by the landlord must be dismissed as matter of law. (*Kaplan* v. *Manufacturers Trust Co.,* 186 Misc. 784.) VII. Since at the time of the execution of plaintiffs' leases, landlord's agent fraudulently withheld from plaintiffs the material fact of the execution of the lease between landlord and the trust company containing demolition provisions, and in reliance thereon plaintiffs were lulled into security to their detriment, the landlord is estopped to assert in any way any benefits or rights under the lease between landlord and the trust company which were fraudulently withheld from plaintiffs. (*Phillips* v. *West Rockaway Land Co.,* 226 N. Y. 507; *Hofmann* v. *Hofmann,* 172 Misc. 378; *Adams* v. *Gillig,* 199 N. Y. 314; *Bridger* v. *Goldsmith,* 143 N. Y. 424; *LaShelle Co.* v. *Armstrong Co.,* 263 N. Y. 79.)

*Vincent Keane, Anthony J. Busicco, Edward E. Blakeslee* and *Louis W. Dawson* for the Mutual Life Insurance Company of New York, defendant, respondent and appellant. I. The law as it now exists requires reversal, whether or not the Appellate Division's determination was correct when made. (*Quaker Oats Co.* v. *City of New York,* 295 N. Y. 527; *Kemp* v. *Rubin,* 298 N. Y. 590; *Matter of Kahn [Nat. City Bank]*, 284 N. Y. 515; *Matter of Tartaglia* v. *McLaughlin,* 297 N. Y. 419; *Pfister* v. *Coopersmith,* 298 N. Y. 500; *Robinson* v. *Robins Dry Dock & Repair Co.,* 238 N. Y. 271; *People ex rel. Clark* v. *Gilchrist,* 243 N. Y. 173; *Bradford* v. *County of Suffolk,* 283 N. Y. 503; *Lane* v. *Johnson,* 283 N. Y. 244; *Harnett & Co.* v. *Englander,* 120 App. Div. 351.) II. Whether tested now or as of the date of reversal, the Appellate Division's determination was erroneous. All requirements for an eviction under subdivision (c) of section 8 of the Business Rent Law have been met. (*Dubois & Sons* v. *Goldsmith Bros.,* 273 App. Div. 306; *Stern* v. *Equitable Trust Co.,* 238 N. Y. 267; *Harris* v. *Bedell Co.,* 222 App. Div. 467, 248 N. Y. 611; *Hudson & Manhattan R. R. Co.* v. *Mayers,* 117 Misc. 183; *Burnee Corp.* v. *Uneeda Pure Orange Drink Co.,* 132 Misc. 435; *Woods* v. *Postal Tel. Cable Co.,* 205 Ala. 236.) III. The Appellate Division imposed a condition precedent upon the landlord which is neither practicable nor authorized by subdivision (c) of section 8. (*Rosasco Creameries* v. *Cohen,* 276 N. Y. 274.)

LEWIS, J. This consolidated action arises from a landlord-tenant controversy involving the right to possession of premises located at 512 Fifth Avenue, New York City, which are owned by the appellant, Mutual Life Insurance Company (hereinafter referred to as Mutual).

In 1945, Mutual leased the premises to Manufacturers Trust Company under a contract which provided for demolition of the building presently located thereon. Upon receiving notice to vacate, fifty-five of the tenants in the building joined in an action against Mutual and Manufacturers Trust Company in which they sought to enjoin those defendants from instituting proceedings to remove them from the building. They also asked for a judgment declaring their legal rights against the defendants. While that action was pending, Mutual, as landlord, commenced separate summary proceedings in Municipal

Court against all its tenants — including the fifty-five tenants who were plaintiffs in the action for a declaratory judgment. Thereafter, by order of the Supreme Court, the summary proceedings were removed from Municipal Court and consolidated with the action by the tenants for declaratory judgment.

After a trial without a jury Special Term rendered a decision awarding Mutual delivery of possession of the premises in suit. Upon appeal by the tenants-plaintiffs the Appellate Division reversed the judgment on the law and the facts (two Justices dissenting) and directed judgment in favor of the tenants to the extent of enjoining the landlord and Manufacturers Trust Company from dispossessing the tenants under subdivision (c) of section 8 of the Business Rent Control Law (L. 1945, ch. 314) " during the emergency period prescribed in such Law or until commencement of construction of a new building * * * is sooner approved by the Civilian Production Administration * * * or until the requirement for Federal authorization of commencement of construction be sooner terminated ". From the judgment entered upon the order of the Appellate Division cross appeals were taken to this court by the landlord and by all but two of the fifty-five tenants.

The building here involved is an eight-story structure with stores on the street level and offices on the floors above. Ownership of this property — with an adjoining building known as 508 Fifth Avenue — was acquired by Mutual in 1941 as a result of the foreclosure of a first mortgage which it held on the property. Eight months after the acquisition of the property by Mutual, negotiations were commenced with Manufacturers Trust Company which contemplated demolition of the existing building and the leasing of the property to Manufacturers Trust Company for relocation of its Fifth Avenue branch bank. With the onset of World War II, negotiations were suspended until the end of hostilities was in sight. In 1944, a long-term lease was entered into between Mutual and Manufacturers Trust Company in which the date of commencement of the term was made to depend upon the cessation of hostilities and the lifting of certain war emergency restrictions relating to building. The lease between Mutual and Manufacturers Trust Company provided, among other things: (1) That Mutual pay up to $1,000,000 for the cost of demolishing the existing building and erecting a new

bank building; (2) that any excess in the cost of demolition and construction over $1,000,000 was to be paid by Manufacturers Trust Company; (3) that all plans, specifications and building contracts were subject to the approval of Mutual, and (4) that the new building will become Mutual's property upon its completion and will be surrendered to it immediately upon termination of the lease.

In March, 1945, the Business Rent Control Law (L. 1945, ch. 314) was enacted and became applicable to the proposed building. On November 1, 1945, Manufacturers Trust Company called upon Mutual to fix the date of commencement of the term of the lease and, in accord with that request, Mutual set February 1, 1946, as the beginning of the term. On January 10, 1946, a construction contract was entered into by Manufacturers Trust Company and George A. Fuller Company which provided that the builder was to receive $85,000 plus the cost of erecting the building. That contract, approved by Mutual, also states: " The Contractor understands that The Mutual Life Insurance Company of New York owns the premises, and that this agreement is subject to the provisions of the lease from said Insurance Company to Manufacturers, dated October 1, 1944." Approval of the plan for construction of the bank was obtained from the Department of Housing and Buildings of the City of New York on January 30, 1946.

On November 28, 1945 — after the date for commencement of the new lease had been set — Mutual, as landlord, gave notices to all its tenants except two that their leases would terminate as of January 31, 1946, and that they would then be required to vacate the premises. All tenants so notified were in possession under leases which provided for termination on sixty days' notice from the landlord. When the various tenants did not vacate the premises on February 1, 1946, dispossess proceedings were commenced which, as we have seen, are now consolidated with the present action for a declaratory judgment brought by the tenants.

The landlord claims that, on February 1, 1946, when the leases of all the plaintiffs tenants involved had come to an end — either by expiration of term or by a sixty-day notice from the landlord according to provisions in the leases — the tenants became statutory tenants subject to the provisions of the Business Rent

Control Law. Accordingly, the landlord sought possession of the property under section 8, subdivision (c), of that statute which provides in part that a tenant who continues to pay rent as provided by the act cannot be removed unless "the landlord seeks in good faith to recover possession for the immediate purpose of demolishing the building or other rental area with the intention of constructing a new building, and the plans for such construction have been approved by the proper authorities, if such approval is required by law."

By their complaint the plaintiffs tenants allege in substance: (1) That the landlord could not validly terminate the leases under the sixty-day notice of election to terminate, inasmuch as (a) it was not within the contemplation of the parties at the time of execution of the leases that the landlord would be permitted to terminate for any reason but its own use, and (b) the landlord is estopped to avail itself of any benefit under the leases which permits termination thereof since it was guilty of fraud in failing to reveal the execution of the lease between Mutual and Manufacturers Trust Company at the time it entered into leases with the plaintiffs tenants and because it was guilty of improper curtailment of services to the tenants. (2) Even if the landlord could validly terminate the leases under the sixty-day notice, the landlord cannot legally dispossess the tenants under the Business Rent Control Law inasmuch as section 8, subdivision (c), is applicable only to situations where demolition is being done by and for the owner and cannot be construed to include a situation where the demolishing is being done by and for the lessee.

The Trial Justice ruled against the tenants on each of the contentions mentioned above. However, during the trial of the action the Federal Civilian Production Administration promulgated an order designed to divert "critical materials from deferrable or less essential construction" (Veterans' Emergency Housing Program, General Restrictions on Construction and Repairs, Part 4700; 11 Federal Register 3190.) That order — known as Veterans' Housing Program Order 1 — forbade construction of a building, such as the one here involved, without first obtaining authorization from the Civilian Production Administration. Although the order was not effective when the present litigation began, it was called to the attention of the Trial Justice who was asked to take judicial notice thereof. The

Trial Justice ruled that Veterans' Housing Program Order 1 did not deprive Mutual of the right to a final order under section 8, subdivision (c), of the Business Rent Control Law.

The Appellate Division ruled that '' we are required to apply the law as it exists at the time the appeal is submitted and decided '' (271 App. Div. 499, 504) and, accordingly, reversed on the law and the facts on the ground that since the landlord had not obtained authorization from the Civilian Production Administration, it was not entitled to regain possession under the Business Rent Control Law.

The cases make it clear that the above-mentioned decision by the Appellate Division made a proper application of the rule of law which requires that '' rights and other legal relations are to be determined as of the time they are declared '' (*Quaker Oats Co.* v. *City of New York*, 295 N. Y. 527, 536; *Matter of Boardwalk & Seashore Corp.* v. *Murdock*, 286 N. Y. 494, 498; *People ex rel. Clark* v. *Gilchrist*, 243 N. Y. 173, 179–180; *Robinson* v. *Robins Dry Dock & Repair Co.*, 238 N. Y. 271, 280–281). By a fortuitous circumstance, however, that same rule of law — which served as the sole basis for the Appellate Division's reversal of the order made herein at Special Term — now becomes the sole basis for our reversal of the order made by the Appellate Division. That circumstance is that on June 30, 1947 — following the date (December 20, 1946) of the order of the Appellate Division upon which was entered the judgment we now review — the order of the Federal Civilian Production Administration which the Appellate Division ruled prohibited Mutual from regaining possession of its building, was revoked. (60 U. S. Stat. 207; U. S. Code, tit. 50, Appendix, § 1821; Housing and Rent Act of 1947; 61 U. S. Stat. 193; U. S. Code, tit. 50, Appendix, § 1881; 12 Federal Register 4265.) From such revocation it follows that since June 30, 1947, authorization by the Federal Civilian Production Administration which the Appellate Division ruled was a prerequisite to the recovery by Mutual of possession of the building here involved — has become unnecessary.

We do not agree with the tenants' argument that since no permit is now required from the Civilian Production Administration or other Federal authority, the litigation between Mutual and the tenants presents only academic questions. Although an appeal will be dismissed as academic where '' nothing remains

but the abstract question who was right " (*People ex rel. Geer* v. *Common Council of City of Troy,* 82 N. Y. 575, 576), if any question remains, dismissal is not in order. (*Matter of Gage,* 141 N. Y 112, 114; *Williams* v. *Montgomery,* 148 N. Y. 519, 523, 525.) In our opinion, the removal of Federal restrictions on construction did not transform this action into one in which " nothing remains but the abstract question who was right." The action is one in which Mutual, a landlord, is seeking to regain possession of its property pursuant to subdivision (c) of section 8 of the Business Rent Control Law. The question involved is the right of tenants to withhold possession of the property from the owner. One of the issues has been the necessity for a Civilian Production Administration permit. Although concededly such a permit is not now necessary, the revocation of that administrative order did not automatically put the landlord in possession; nor does it mean that the landlord no longer must comply with the provisions of section 8, subdivision (c). Accordingly, our conclusion is that there remain in the case other controversial issues which bear upon the question whether the landlord is entitled to regain possession of the property.

The tenants also argue that since the inception of this litigation the facts have changed to such an extent that a determination of the appeal on the facts presented to Special Term would be merely a decision of a moot question. The facts which have changed since the original trial are said to be as follows: On July 16, 1947 — after the revocation of the Federal order requiring a Civilian Production Administration permit — Manufacturers Trust Company informed Mutual that, in its opinion, " your appeal to the Court of Appeals in the present litigation with your tenants is now academic ". Thereafter, on October 6, 1948, Manufacturers Trust Company notified Mutual that it regarded the lease agreement abandoned by Mutual and demanded the return of the deposit made under that agreement. On November 22, 1948, Manufacturers Trust Company commenced suit against Mutual to recover the amount of that deposit. Therefore, claim the tenants, since there has been an abandonment of the lease, since no bank building is to be built, and since no plans for any other building have been approved, the appeal must be dismissed because the question of what Mutual's rights would have been if its lease with Manufacturers

were to be carried out has become "abstract, academic and moot." It is Mutual's position, however, that Manufacturers Trust Company is wrong in claiming an abandonment of the lease. Contending that the Trust Company is still bound by its contract, it appears that Mutual intends to resist the action by which Manufacturers seeks to be released from its agreement.

The record thus makes it clear that the alleged change in facts upon which the tenants would have us dismiss the present case has not been the subject of a judicial determination of the rights of Manufacturers Trust Company and Mutual. Although this court, in a proper case, may take judicial notice of changes in applicable law occurring after the decisions below (see *Graybar Elec. Co.* v. *New Amsterdam Cas. Co.,* 292 N. Y. 246, 250) evidence of new facts bearing upon the correctness of those decisions — even though pertinent to the inquiry — cannot be reviewed by this court in reaching its decision. (*Matter of New York Cable Co.* v. *Mayor of City of New York,* 104 N. Y. 1, 40; and see *Rudiger* v. *Coleman,* 228 N. Y. 225, 233.)

The judgments should be reversed, without costs, and a new trial granted.

DESMOND, J. (dissenting).

I dissent.

I think that the judgment below should be modified, without costs, by providing that the complaint in the consolidated action be dismissed, on the ground that the action has become moot. Three and one-half years ago, in November, 1945, Mutual Life Insurance Company, the building owner, notified its tenants that they were required to vacate not later than January 31, 1946, because the owner had rented the entire parcel of land to Manufacturers Trust Company, for a term beginning February 1, 1946, and because it (Mutual) desired to give possession to such lessee and because the building in which these tenants were located was "to be demolished immediately after January 31, 1946 and is to be replaced by a new building." The tenants refused to move, but brought suit for declaratory judgment; the landlord then brought eviction proceedings against all the tenants, and the action and proceedings were consolidated, and the consolidated cause, which we have before us on this appeal, is still pending. In October, 1948, as

appears without dispute from statements made to us in the briefs on this case and in oral argument, Manufacturers Trust Company, proposed tenant of the new building, notified Mutual Life Insurance Company, that, by reason of the long delays, Manufacturers Trust Company considered that the agreement between the owner and Manufacturers Trust Company made in 1944, had been terminated; Manufacturers demanded the return of its $100,000 deposit and notified the owner that Manufacturers would claim damages. In November, 1948, Manufacturers brought suit against the owner for the return of its deposit and for damages, which suit is pending. The Business Rent Control Law of this State, forbidding the eviction of tenants during the emergency, makes an exception in a case where the landlord in good faith wants his property back to demolish the present building and erect a new one. When this case was tried below and argued in the Appellate Division, it appeared that the landlord was, on the facts, entitled to possession under that exception. However, it is now evident that the proposed tenant for the new building is refusing to perform, and that the proposed new building is not going to be erected for a long time, if ever. Under these circumstances, I think it would be wrong to order these tenants evicted on the basis of a state of facts which has changed so materially, and to compel their removal because of the proposed erection of a new building, construction of which seemed imminent several years ago, but the construction of which is now at least doubtful.

At the very least, there should be a new trial of the facts as they now are, not as they were in 1946.

LOUGHRAN, Ch. J., CONWAY, DYE, FULD and BROMLEY, JJ., concur with LEWIS, J.; DESMOND, J., dissents in opinion.

Judgments reversed, etc.