In the Matter of SLEWETT & FARBER, Respondents-Appellants, v BOARD OF ASSESSORS OF THE COUNTY OF NASSAU et al., Appellants-Respondents. ATTORNEY-GENERAL OF THE STATE OF NEW YORK, Intervenor-Appellant-Respondent.

Second Department, January 21, 1981

404

**APPEARANCES OF COUNSEL**

*Edward G. McCabe, County Attorney (Joshua A. Elkin* of counsel), for appellants-respondents.

*Koeppel, Sommer, Lesnick & Martone,* P. C. *(Bernard Sommer, Adolph Koeppel, Irving I. Lesnick, Tracie P. Peddy* and *Ann Del Casino* of counsel), for respondents-appellants.

*Robert Abrams, Attorney-General (John M. Farrar, Robert Schonfeld* and *George D. Zuckerman* of counsel; *Beth Turtz* on the brief), intervenor-appellant-respondent *pro se.*

*Allen G. Schwartz, Corporation Counsel (Edith I. Spivack, Reed G. Schneider* and *Jay M. Herman* of counsel), for the City of New York, *amicus curiae.*

*Bleakley Schmidt,* P. C. *(Frederick J. Martin* and *Hugh D. Fyfe* of counsel), for Rego Properties Corp. and Citizens Tax Council, Inc., *amici curiae.*

**OPINION OF THE COURT**

LAZER, J. P.

At principal issue on these cross appeals are the validity and effect of certain legislative enactments which retroactively altered the means and standards by which aggrieved taxpayers could establish inequality of assessed valuations of real property. The underlying controversy involves the rates at which real property in Nassau County

was assessed for the years 1965/1966 through 1977/1978; the appellate questions pertain, however, to the constitutionality of laws which would nullify petitioners' judicial success in establishing those rates as identical to the equalization rates fixed for Nassau County by the State Board of Equalization and Assessment.

The petitioners, who own a large commercial parcel, have instituted proceedings to review its assessment, alleging that for the years in issue their property was assessed at a higher ratio to fair market value than other property in the county. In moving for partial summary judgment fixing the ratio to fair market value at which property in Nassau County was assessed for those years, the petitioners relied upon the rates established in the case of *860 Executive Towers v Board of Assessors of County of Nassau* (84 Misc 2d 525, affd 53 AD2d 463, affd *sub nom. Pierre Pellaton Apts v Board of Assessors of County of Nassau*, 43 NY2d 769, on the opn at the Appellate Division) for tax years 1965/1966 through 1973/1974—which for the years 1970/1971 through 1973/1974 clearly were based upon the State equalization ratios—and upon the applicable equalization rates for the remaining years under review. In February, 1978, when the motion was made, the use of equalization rates to prove ratio of assessment was provided for in subdivision 3 of section 720 of the Real Property Tax Law. Special Term granted petitioners' motion and fixed each year's ratio at the percentage reflected in *860 (supra)* for the earlier years and the appropriate equalization rates for the years following those decided in *860*. The county now asserts that if collateral estoppel principles bind it to the same equalization ratios in the numerous other pending inequality proceedings covering the same years, the financial consequences of the summary judgment order will be disastrously severe. Following Special Term's grant of partial summary judgment, the 1978 and 1979 Legislatures enacted or amended a number of laws resulting in significant alterations or restrictions, both prospectively and retroactively, in the methods of proving inequality. Subsequent to the enactment of the 1978 legislation, but prior to the 1979 legislation, Special Term granted the county renewal of the motion and declared the 1978 changes uncon-

stitutional while holding as well that the county was in conformity with certain provisions of the new legislation which deferred the necessity of compliance with the requirement for full value reassessment. (97 Misc 2d 637.) These cross appeals ensued.

With the issue of constitutionality of the laws adopted in both years in principal focus, the Attorney-General has intervened to defend the enactments and the City of New York has obtained *amicus curiae* status for the same purpose. Rego Properties Corp. and the Citizens Tax Council, Inc. have been granted *amicus curiae* status to support petitioners' claims of unconstitutionality. Under the circumstances, the legislative and judicial history leading to the current dispute comprise a vital backdrop to its resolution.

### THE INEQUALITY CONCEPT AND ITS PROOF

In an inequality case, it is the taxpayer's contention that property in the taxing district generally is assessed at less than its full value for tax purposes and that the parcel under review has been assessed at full value or at a greater percentage of its full value than properties in the district generally *(People ex rel. Yaras v Kinnaw,* 303 NY 224). "For example, a specific claim might be that a subject property was assessed at 35% of its full value while other properties on the roll were assessed at only 30% of full value. If true, the petitioning taxpayer would be paying more than his due share of the aggregate tax" *(860 Executive Towers v Board of Assessors of County of Nassau,* 53 AD2d 463, 466, *supra* [HOPKINS, J.]). To succeed, therefore, the taxpayer must prove not only the ratio at which property in the tax district generally has been assessed, but that his own parcel was assessed at a higher ratio.

Under former section 293 of the Tax Law (L 1909, ch 62, as amd), the predecessor of the currently pertinent Real Property Tax Law provisions, the mandated method of proof compelled the petitioner and the assessing authorities to establish ratio by selecting a number of parcels from the assessment roll and proving their full value at trial. Once full value was determined, the total of the assessed values of the properties selected would be divided by the

total of their full values to obtain the actual over-all ratio of assessed value to true market value in the taxing district (see *People ex rel. Hagy v Lewis*, 280 NY 184). Disagreement as to which parcels were to be used was resolved by the trial court's selection of an equal number from each list submitted by the parties. Either litigant could supplement the select parcel system by offering evidence of the assessment ratio of parcels actually sold within the district during the periods under review.

In 1949, the State Board of Equalization and Assessment (SBEA) was created (see L 1949, ch 346) to establish the true ratios at which property was being assessed in all taxing districts and thus to equalize tax burdens between districts which were assessed at differing proportions to true value. The established rates also served to provide a basis for the distribution of State aid based on the assessed valuations (see L 1949, ch 346, § 1). Under relevant sections of the Real Property Tax Law, the SBEA is required to establish equalization rates for each city, town and village (Real Property Tax Law, § 1202; see, also, Real Property Tax Law, § 1250 *et seq.*), as well as for each county in the State (Real Property Tax Law, § 1214), and to sample the ratio of assessments in all cities, towns and villages in the State at least once every five years (Real Property Tax Law, § 1200). The rates themselves are arrived at by examination of sales and other data from the assessing units and the application of various formulae to the information obtained. In 1951 an effort to broaden the type of evidence admissible in an inequality trial by permitting the introduction of equalization rates was rejected in *People ex rel. Yaras v Kinnaw* (303 NY 224, *supra*). The *Yaras* court (p 228) decided that as far as inequality litigation was concerned, equalization rates "not only were entitled to no weight at all, but in truth were inadmissible under section 293 of the Tax Law." Although the court concluded that use of such rates would be misleading since they did not purport to reflect the ratio of assessments to value within the tax district itself, it noted (p 233) that evidence of actual sales was entitled to "substantial weight" in proving inequality. The advent of scientifically devised random sampling ultimately became the basis for the introduction

of actual sales by use of a statistical methodology with potential probative value (see *Matter of Mid-Island Shopping Plaza v Podeyn,* 25 Misc 2d 972, affd 14 AD2d 571, affd 10 NY2d 966) if properly utilized (cf. *Matter of Tilsac Corp. v Assessor of Town of Huntington,* 55 Misc 2d 431, affd 41 AD2d 604, mot for lv to app den 32 NY2d 611). Nevertheless, as late as 1955, the select parcel method was still considered probative by the Court of Appeals, particularly if the sample parcels represented a fair cross section of the situation in the tax district (see *Matter of Wolf v Assessors of Town of Hanover, County of Chautauqua,* 308 NY 416).

In 1961 the Legislature attempted to liberalize the means of proving inequality by amending subdivision 3 of section 720 of the Real Property Tax Law (the successor to Tax Law, former § 293) to permit either party to introduce the State equalization rate established for the assessment roll for the year under review (see L 1961, ch 942). The Court of Appeals remained unimpressed, however, and in *Matter of O'Brien v Assessor of Town of Mamaroneck* (20 NY2d 587) rejected a taxpayer's effort to rely exclusively on the equalization rate for his proof. Concluding that the 1961 amendment had rendered equalization rates admissible but had not endowed them with probative value, the court noted (pp 596, 597) that State equalization rates served an entirely different function from "litigated inequality," were arrived at "by processes quite foreign to those employed in judicial determinations," and "may have little relationship to the actual equality or inequality in a district".

Eight more years were to elapse before a further effort to legitimize the probative value of equalization rates succeeded. In 1969, subdivision 3 of section 720 of the Real Property Tax Law again was amended (see L 1969, ch 302) by eliminating the mandatory requirement for resort to the select parcel system, thereby providing inequality petitioners with parcel selection, actual sales and equalization rates as permissible methods of proof. The litigation which ensued resulted in nothing short of a sea change, for in *Guth Realty v Gingold* (34 NY2d 440, 450), the Court of Appeals not only held that inequality could be established by means of the State equalization rate without resort to the other methods, but granted the rate a high degree of sanctification

by characterizing its probative value as "objectively arrived at" and as tending "to greatly simplify and narrow the scope of these proceedings." Parcel selection and proof of actual sales were sharply criticized (pp 449-450) as "not only [creating] discouraging and enormous expense for the taxpayer, but [promoting] the search by both sides for samples which are at the extreme ends of the spectrum—the same egregious problem we seem always to find in expert valuation testimony in condemnation cases."

Despite the destructive effect of this criticism upon the weight to be given parcel selection and evidence of sales, *Guth (supra)* did not preclude assessing authorities from challenging the SBEA methodology in each trial for the purpose of demonstrating the nonprobative nature of the equalization rate in the particular taxing unit. But even this limited avenue of escape for assessing authorities was shut in *860 Executive Towers v Board of Assessors of County of Nassau* (53 AD2d 463, affd *sub nom. Pierre Pellaton Apts. v Board of Assessors of County of Nassau*, 43 NY2d 769, *supra)* when this court determined that once a ratio had been fixed, retrials of the SBEA's methodology were not envisioned and that the doctrine of collateral estoppel was applicable against the county in ratio cases. As we then declared (pp 475-476) : "The County ha[s] proposed to litigate the inequality issue *de novo* in these proceedings, challenging the SBEA methodology all over again * * * Here it appears without doubt that the County is raising the identical issues in the later proceedings concerning the validity of the statistical methods of SBEA which it did in the 860 proceeding. Moreover, the review which we have made of the evidence submitted in the 860 proceeding shows that the County fully litigated the issues, and cannot be prejudiced by the ruling of the Special Term that it is now precluded from raising the same issues again. Surely, it would constitute a waste of time, energy and money to permit the issues to be tried once more by the introduction of the lengthy and technical evidence which was offered in the 860 proceeding (cf. *McCrory Corp. v Gingold*, 52 AD2d 23, 26-27 [GOLDMAN, J.])."

The scope of the problem confronting the various taxing districts was expanded and complicated by the almost con-

temporaneous holding in *Matter of Hellerstein v Assessor of Town of Islip* (37 NY2d 1) which overthrew the venerable (see, e.g., *People ex rel. Board of Supervisors of Westchester County v Fowler*, 55 NY 252; *Van Rensselaer v Witbeck*, 7 NY 517; *People ex rel. Congress Hall v Ouderkirk*, 120 App Div 650; *People ex rel. Sheldon v Fraser*, 74 Hun 282, affd 145 NY 593), if illegal (see, e.g., Real Property Tax Law, § 306; L 1933, ch 470, § 18; L 1909, ch 62; L 1896, ch 908, § 21; 1 NY Rev Stat [1829], ch XIII, § 17; L 1823, ch 262, § 5; L 1801, ch 179; L 1788, ch 65) practice of assessing real property at a fraction of its full market value. Although the *Hellerstein* court made its mandate prospective only and granted the Town of Islip reasonable time to reassess at full value with an outside date of July 1, 1978 (see 39 NY2d 920), the predicament in that locale was duplicated in many taxing districts in the State. The prospect of eradicating in a single reassessment all the assessment disparities which have arisen in an era of frenzied real estate development and inflation profoundly shook public authorities and helped lead to legislative action.

### THE LEGISLATIVE RESPONSE — 1977 AND 1978

The 1977 Legislature enacted a three-bill package (see L 1977, chs 888, 889, 890) which established a temporary committee to review the real property tax system and to make recommendations to assure equitable distribution of the tax burden (L 1977, ch 889, § 3), extended the effective date of the *Hellerstein* decision to December 31, 1980 for any assessing unit which commenced a good faith reassessment on or after the 1976 taxable status date and was actually carrying out that revaluation (L 1977, ch 888, § 1; see, also, L 1980, ch 880 [extending the *Hellerstein* moratorium to May 15, 1981]), and again amended subdivision 3 of section 720 of the Real Property Tax Law (L 1977, ch 888, § 2; L 1977, ch 890). The latter amendment provided that introduction of the State equalization rate could be supplemented by information *"with particular reference* to the information developed by the state board with respect to the ratio of assessments to market values for each major type of taxable real property".

After the effective date of the 1977 enactments and shortly after the Court of Appeals had affirmed this court's

order in *860 (supra)* petitioners moved: (1) to consolidate all their tax review proceedings from tax years 1965/1966 through 1977/1978; (2) for partial summary judgment on the issue of ratio from 1965/1966 through 1973/1974 on the basis of the ratios found in *860*, and from 1974/1975 through 1977/1978 on the basis of the SBEA rate promulgated for the County of Nassau; (3) in the alternative for partial summary judgment on the ratios for 1974/1975 through 1977/1978 as established by the then-pending ratio trial in a case entitled *Georgian Web Offset Co. v Board of Assessors of County of Nassau* (Supreme Ct, Nassau County, May 1, 1973, MEADE, J.); and (4) that the ratios applicable in all other tax review proceedings brought by the more than 2,000 other petitioners represented by petitioners' counsel be those established on the instant motion.

On July 5, 1978, Special Term granted the motion to the extent of consolidating the proceedings and granting partial summary judgment on the ratio issue on the basis of the rates fixed in *860 (supra)* for the earlier years under review and the equalization rates for the later years. The court's rationale was predicated in great degree on the principles established in *860* which barred the county from relitigating the appropriateness of the State rate. Special Term rejected the county's contention that the 1977 amendment to subdivision 3 of section 720 of the Real Property Tax Law limited proof of inequality to a comparison with the same type of property, concluding that the amendment was merely declaratory of the existing practice of admitting computer printouts of SBEA data into evidence.

The Legislature responded quickly. On July 11, 1978 it created section 307 of the Real Property Tax Law and again amended subdivision 3 of section 720 (see L 1978, ch 476). Section 307 was comprised of five subdivisions, the first two of which extended the effective date of the *Hellerstein* mandate, while the last three changed the pleading requirements in inequality litigation. Subdivision 3 required every petition alleging inequality to assert that the assessment was made at a higher proportionate valuation than that of other property *of the same major type* "as determined" by the SBEA and authorized the admission of additional evidence to establish this; subdivision 4 authorized

petitioners in pending proceedings to amend their petitions accordingly; and subdivision 5 made the section retroactively effective by applying it to all pending proceedings. The provisions of section 307, originally intended to expire on December 31, 1980, were recently extended to May 15, 1981 (L 1980, ch 880). The amendment to subdivision 3 of section 720 deleted the reference to the introduction of supplementary SBEA data and returned the subdivision to its pre-1977 wording. The legislative intent of the amendments was stated to be remedial and to correct "imperfections" in the 1977 legislation (L 1978, ch 476, § 3).

Shortly after the 1978 legislation became effective, the county moved for renewal and reargument of petitioners' summary judgment motion, arguing that the enactment of section 307 of the Real Property Tax Law (requiring that class inequality be pleaded) "clearly indicates that the position taken by respondents, on the original motion, was the true intention of the legislature." By the statute's own terms, declared the county, section 307 was applicable to all pending proceedings and therefore to the one at bar. Although Special Term denied reargument, it granted renewal and held that the last three subdivisions of section 307, authorizing assessment of different classes of property at different fractions of value, were unconstitutional because (1) the lack of guidelines by which the SBEA could establish the various classes of property resulted in an illegal delegation of legislative power, and (2) the fact that the power vested in local assessors to vary the fraction of true value at which the classes were to be taxed would result in property of the same class being assessed at varying percentages in contiguous districts in violation of the due process and equal protection clauses of the Fourteenth Amendment. The court also concluded that the amendment violated due process and equal protection precepts insofar as it was unreasonably retroactive and designed to divest taxpayers who instituted review proceedings of their refund remedy (see *Matter of Slewett & Farber v Board of Assessors of County of Nassau*, 97 Misc 2d 637, *supra*). The county's only solace was in the further holding that it was exempt from complying with *Hellerstein* (37 NY2d 1, *supra*) until the end of 1980.

THE 1979 LEGISLATION

Although the current appeals are from the order relating to the 1978 legislation, the parties ask us to take notice of the fact that the 1979 Legislature again addressed the inequality issue by further amendment to subdivision 3 of section 720 of the Real Property Tax Law and the enactment of a new section 721 (see L 1979, chs 126, 127), and they further request that we pass upon the validity of this legislation. The 1979 legislation went to the heart of the perceived problem by eliminating the use of equalization rates as evidence in inequality proceedings, subject to an exception in section 721 of the Real Property Tax Law which would permit resident owners of residential structures containing three dwelling units or less to introduce any relevant evidence—language which the present parties interpret to include equalization rates. Although the legislation was intended to have retroactive application going back as far as 1970, both enacting chapters (see L 1979, chs 126, 127) provided that the statutes were to expire on December 31, 1980. While the Legislature utilized its November 19, 1980 extraordinary session to extend the expiration date of section 307 of the Real Property Tax Law, no similar action was undertaken to extend the life of chapters 126 and 127, and it is now apparent that they have ceased to exist.

We are aware, of course, of the relatively ancient principle that an appellate forum must decide the matter before it on the basis of the law as it stands at the time of appeal (see, e.g., *United States v Schooner Peggy*, 1 Cranch [5 US] 103 [MARSHALL, Ch. J.] ; *Gallewski v Hentz & Co.*, 301 NY 164; *Gilpin v Mutual Life Ins. Co. of N.Y.*, 299 NY 253; *Matter of Kahn v National City Bank of N.Y.*, 284 NY 515; *Robinson v Robins Dry Dock & Repair Co.*, 238 NY 271; cf. *Kelly v Long Is. Light. Co.*, 31 NY2d 25 [change in decisional law]), but the statutes which eliminated or limited the use of equalization rates as evidence have evaporated with the year's end. Since the effect of those 1979 laws upon these petitioners is no longer before us, only the validity of the 1978 legislation remains for consideration.

THE 1978 LEGISLATION

Special Term's order declared unconstitutional the latter three subdivisions of section 307 of the Real Property Tax Law which required inequality petitions to allege that the challenged assessments had been made at a higher proportionate ratio to value than that of other property of the same major type, as defined by the SBEA, and to offer evidence to such effect. As noted the court also found the county had complied with those subdivisions of section 307 which had the effect of deferring the *Hellerstein* mandate. As to the latter holding, we detect no meaningful issue.

Scrutiny of the challenged subdivisions of section 307 reveals that they do not mandate that SBEA *ratios* relative to individual categories of property be introduced in evidence but only that the inequality be proven by comparison within the categories of property to be established by the SBEA. Special Term reasoned that the three relevant subdivisions of section 307 were deficient because they constituted an invalid delegation of legislative power and because of the length of the retroactivity specified. We agree that the sections are unconstitutional. Although section 307 gives the appearance of merely regulating pleadings in tax review proceedings, it actually accomplishes a substantive remodeling of established law governing the imposition of taxes without further enabling legislation as to requisite details. Prior to section 307, the Real Property Tax Law was firm in requiring, if not assessment of all property at its fair market value (see Real Property Tax Law, § 306), then assessment at a uniform fraction of fair market value for all property in the taxing unit (see *860 Executive Towers v Board of Assessors of County of Nassau*, 53 AD2d 463, *supra*). Section 307, however, requires proof of inequality predicated upon comparison to a particular class of property rather than all property within the district. Because its provisions were made applicable to all pending causes of action, the ultimate effect of the section, as Special Term concluded, was to "increase * * * or decrease * * * the amount at which property could be initially assessed." *(Matter of Slewett & Farber v Board of Assessors of County of Nassau*, 97 Misc 2d 637, 650, *supra.)* We deal,

then, with a statute which has the effect of retrospectively sanctioning a tax on real property by class or type.

The general proposition is that "retroactive taxation is generally unconstitutional" *(RKO-Keith-Orpheum Theatres v City of New York*, 308 NY 493, 501). Notwithstanding this principle, however, whether a taxing statute which is expressly retroactive will be sustained "is usually a question of degree" *(People ex rel. Beck v Graves*, 280 NY 405, 409). In *Beck* the issue was the validity of a 1935 amendment to the Tax Law which purportedly imposed a State income tax on income derived from dealings in real or personal property located without the State, a departure from prior established tax policy. By its terms, the statute imposed a retroactive tax for the previous 16 years. In assessing the applicable precedents, the court concluded (p 409): "Taxing statutes which by their terms were retroactive for short periods have been held to be valid. No case has ever held such a statute to be valid which attempted to permit a retroactive assessment of a tax for as long a period as sixteen years." On similar reasoning, a utility tax imposed in 1941 and made retroactive to 1937 was deemed " 'so harsh and oppressive as to transgress the constitutional limitation [of due process].' *(Welch v Henry*, 305 U. S. 134, 147.)" *(Matter of Lacidem Realty Corp. v Graves*, 288 NY 354, 357). These authorities comprise a sufficient precedential basis for a conclusion that the excessive retroactivity of subdivisions 3, 4 and 5 of section 307 of the Real Property Tax Law render them unconstitutional as applied to tax years prior to their effective date (cf. *Matter of Lacidem Realty Corp. v Graves, supra*, p 357 [full retroactivity voided; alternative limited retroactivity sustained]).

We also conclude that the prospective operation of the same subdivisions (see L 1978, ch 476, § 4) suffers from similar fatal deficiencies. The class system of taxation set forth in subdivision 3 of section 307, is not imposed uniformly against all taxpayers of the varying classes in the taxing district, but only upon those who have been brash enough to pursue a judicial remedy against the sovereign. Nowhere in the entire structure of the 1978 legislation can there be found statutory authority for the tax assessor to

assess classes of property at varying rates. Indeed, the continuing mandate of the Real Property Tax Law—which has emerged unscathed from the seeming barrage of amendments—is that "[a]ll real property in each assessing unit" be assessed at its full valuation (Real Property Tax Law, § 306; emphasis supplied), or at least at a uniform fraction of full value.

It is beyond cavil that "[n]o taxpayer may be saddled with a discriminatory assessment which imposes on him more than his fair share of the total tax burden" *(Matter of Rokowsky v Finance Administrator of City of N.Y.*, 41 NY2d 574, 576). If the unequivocal and unaltered demand of the taxing statute itself is uniformity of assessment, it becomes impossible to view section 307 as creating a valid class tax system. Indeed, as Justice MANGANO pointedly observes in his concurring opinion, section 706 of the Real Property Tax Law still requires the tax review petition to allege over-all inequality in addition to the class inequality required by section 307. In essence, then, the pleading mandate of section 307 seems to impose an additional tax liability upon the relatively small segment of taxpayers who litigate the inequality issue despite the plain prescription in the taxing scheme for uniformity of assessment. Furthermore, section 307 has introduced a new factor into inequality litigation—the correctness of the assessment is made more probable by the fact that it is being litigated.

Accordingly, Special Term was not in error when it declared the latter three subdivisions of section 307 of the Real Property Tax Law violative of the Constitution and affirmance is required.

MANGANO, J. (concurring). I agree with the majority that subdivisions 3, 4 and 5 of section 307 of the Real Property Tax Law are unconstitutional. I would only like to explain my interpretation of the tortuous language and obscured intent of subdivision 3 of that section. To do so, I must view subdivision 3 in the context of the Legislature's entire 1978 scheme for pleading and proving a claim of inequality in a proceeding to review a real property assessment.

By chapter 476 of the Laws of 1978, section 307 was

added to the Real Property Tax Law and section 720 was amended. Subdivision 3 of the former essentially regulated pleadings in assessment review proceedings, while subdivision 3 of the latter regulated evidence.

A literal construction of the statutory language of these two provisions resulted in procedural requirements of a rather confusing nature.

Initially, it must be pointed out that chapter 476 of the Laws of 1978 should be read in conjunction with section 706 of the Real Property Tax Law. That section sets forth the basic contents of a petition in an assessment review proceeding. By its terms, when a proceeding is brought to review an assessment on the ground that it has been made at a higher proportionate valuation than that of other real property on the same roll, the petition shall state that the petitioner is or will be injured by such inequality.

Without disturbing section 706, the Legislature, in 1978, enacted section 307, which, in subdivision 3, requires: "in a tax review proceeding which is based in whole or in part on a claim of inequality * * * the petition required by section seven hundred six of this chapter shall allege, *in addition to the contents otherwise required by such section,* that the assessment has been made at a higher proportionate valuation than the assessment of other taxable real property of the same major type, as determined by the state board of equalization and assessment pursuant to section twelve hundred of this chapter". (Emphasis added.) Thus, the 1978 legislation seemingly established pleading requirements that would necessitate a petition alleging inequality based on the subject property's inclusion in two distinct classes of property, viz., that of all properties on the same assessment roll (Real Property Tax Law, § 706) and that of all properties of the same major type on the same assessment roll (Real Property Tax Law, § 307, subd 3).

Subdivision 3 of section 307 continues, and the confusion is compounded. It reads that "evidence to such effect [a vague phrase] may be introduced together with such evidence *otherwise admissible* under subdivision three of section seven hundred twenty of this chapter." (Emphasis added.) Again, literally construed, this language seems to

indicate that *any* evidence showing the assessment inequality of the subject property with properties in the same class, as that class is determined by the SBEA, may be introduced in the proceeding. Furthermore, this evidence was to be offered in addition to such evidence otherwise admissible under former subdivision 3 of section 720.*

In turn, former subdivision 3 of section 720 (as amd by L 1978, ch 476, § 2) had set forth the three types of evidence admissible on the issue of inequality in any assessment review proceeding. The 1978 version of this provision authorized the very same evidence as had been authorized for such proceedings since 1961 (L 1961, ch 942, § 1), i.e., (1) selected parcels, (2) actual sales, and (3) the State equalization rate. The 1978 amendment failed to effect any change in the statutory language that would require parcels to be selected or actual sales to be reviewed from among class properties. Furthermore, the State equalization rate, which is a universal rate applied to all properties, was maintained as admissible evidence. In other words, the same statutory language that had always authorized inequality evidence based on assessment comparisons with unclassified property remained unchanged. Moreover, a 1977 amendment to subdivision 3 of section 720 of the Real Property Tax Law (L 1977, ch 888, § 2), which had included in the subdivision the only reference to property classification contained therein, was deleted by the 1978 amendment now under review.

---

* I should note that even greater confusion may have been created by subsequent amendments to the Real Property Tax Law. By section 2 of chapter 126 of the Laws of 1979, subdivision 3 of section 720 was amended to delete any reference to the State equalization rate as admissible evidence in inequality proceedings. This amendment, however, expired on December 31, 1980 (L 1979, ch 126, § 4). Therefore, since section 2 of chapter 126 of the Laws of 1979 repealed former subdivision 3 of section 720, and since the 1979 repealing statute has now expired, the current version of section 720 is without a subdivision 3, there being nothing to indicate the Legislature's intent that former subdivision 3 be revived. (See *Village of Rome v Knox*, 14 How Prac 268, 275; McKinney's Cons Laws of NY, Book 1, Statutes, § 374.) Thus, when subdivision 3 of section 307 of the Real Property Tax Law which is now due to expire on May 15, 1981 (L 1980, ch 880, § 3), refers to subdivision 3 of section 720, the reference is meaningless. Furthermore, a real gap may have been created in the rules governing the admissibility of evidence in inequality proceedings. If additional legislation is not enacted, this will have to be filled in by courts applying common-law rules of evidence.

As a result of the 1978 legislation, therefore, a real procedural and evidentiary disorder was created. A petitioner in an inequality proceeding had to plead inequality with all properties on the roll, as well as inequality with those similarly classified. On his proof, a petitioner could present evidence as to each of these issues, but, of course, if he did, he either proved too much or too little, or both. And, if the last, then he would have proven the elements for two exclusive recoveries, without knowing which one he could rightfully claim.

Such a result is, of course, absurd, and, by the rules of statutory construction, must be avoided (McKinney's Cons Laws of NY, Book 1, Statutes, § 145; *Smith v People*, 47 NY 330). Moreover, it must be presumed that such a result was never intended by the Legislature (McKinney's Cons Laws of NY, Book 1, Statutes, § 145).

By applying the rules of statutory construction and by reviewing the legislative history of chapter 476 of the Laws of 1978, the Legislature's intent in enacting subdivision 3 of section 307 of the Real Property Tax Law becomes clear. It is this intent which is the primary consideration in ascertaining the meaning and effect of any statute (McKinney's Cons Laws of NY, Book 1, Statutes, § 92).

The natural and obvious meaning of the language of subdivision 3 of section 307 (see McKinney's Cons Laws of NY, Book 1, Statutes, § 94) indicates that assessment inequality petitions must allege inequality based on class comparison. If this provision is read in conjunction with section 706, as it must be (see McKinney's Cons Laws of NY, Book 1, Statutes, § 97), the result is an apparent conflict in pleading requirements, as discussed above. Consequently, a harmonious reading of the Real Property Tax Law becomes impossible. Harmony is achieved (see McKinney's Cons Laws of NY, Book 1, Statutes, § 98), however, when subdivision 3 of section 307 is interpreted as repealing that portion of section 706 which merely required an allegation of inequality based on a comparison with properties on the same assessment roll, without reference to their classification. If legislative intent controls, as it does (see McKinney's Cons Laws of NY, Book 1, Statutes, § 392),

this repeal by implication will be dictated. The whole spirit of subdivision 3 of section 307 is that pleading requirements are being changed and more narrowly defined. This is firmly supported by legislative memoranda urging enactment of this statutory provision. For example, the memorandum in support of the Assembly bill reads, in relevant part: "[The new law p]rovides that in alleging inequality, petitioner must show that his property is assessed at a higher proportionate value than properties of the same major type on the same assessment roll * * * This Bill would Alter [present law.] Presently, a petitioner must show that the property is assessed at a higher proportionate value than all other properties not merely similar properties." I must conclude, therefore, that subdivision 3 of section 307 was intended to introduce new pleading requirements that superseded those in section 706, and to that extent, contrary provisions of section 706 were repealed.

Similarly, to the extent that subdivision 3 of section 307 changed and more narrowly defined the requisite allegation of assessment inequality in such a proceeding, it necessarily refined the meaning and effect of subdivision 3 of section 720. For in revising pleading requirements in an assessment proceeding, the Legislature must have intended that the nature of the evidence to be presented in proof thereof would concomitantly change. Once again, therefore, in reading the Real Property Tax Law as a whole and in attempting to harmonize all of its parts, I must conclude that the over-all effect of chapter 476 of the Laws of 1978 was to maintain the three types of evidence authorized by former subdivision 3 of section 720, but to restrict their use in assessment inequality proceedings to proving comparison with similarly classified property. Thus, pursuant to the 1978 legislation, a petitioner could only show actual sales and select parcels of property of the same major type as that under review. Furthermore, the State equalization rate, as a universal rate, could no longer be used. Instead, the more appropriate class rate could be proven, even though the SBEA categorically denied the existence of such class rates. (See Memorandum to the Governor from Counsel to the SBEA [6 Opns of Counsel of St Bd of Equal & Assess No 2], disapproving L 1978, ch 476, as quoted by

Special Term, *Matter of Slewett & Farber v Board of Assessors of County of Nassau,* 97 Misc 2d 637, 649.) Nevertheless, at Special Term, the county suggested that such class rates for major type property may be extracted from data and information on file with the SBEA. It must be implied, therefore, that the 1978 legislation replaced the State equalization rate as admissible evidence under former subdivision 3 of section 720 with evidence of SBEA's class data as proof of a class rate. For only the latter would be relevant evidence consistent with the 1978 pleading changes.

The foregoing is an explanation of my understanding of the procedural and evidentiary scheme in assessment inequality proceedings established by and resulting from chapter 476 of the Laws of 1978. Given this understanding, it is patently clear to me that the Legislature in 1978 intended a basic revision in the very nature and purpose of such a proceeding and, consequently, in the claim presented and the recovery sought therein. No longer could a taxpayer claim an unequal assessment as compared to all other taxpayers. No longer could he seek to recover a refund because a tax levy had cast on him an unequal share of the total burden of all taxpayers. By reason of chapter 476 of the Laws of 1978, he could only claim and recover a refund representing his payment of an unfair share of the tax burden of similarly situated property owners. Thus, by a presumption contrary to constitutional, statutory and judicial law, a property tax by property type, class, or category was established, and, by procedural and evidentiary revisions governing assessment inequality proceedings, this new tax structure was imposed.

Convinced that subdivision 3 of section 307, in effect, created a new and different property tax from that previously imposed, I must agree with the majority that subdivisions 4 and 5 of that section authorizing an unlimited retroactive application of subdivision 3 to all pending assessment proceedings renders all three subdivisions (3, 4 and 5) unconstitutional.

I would add that subdivision 3 effects a substantive change in New York's property tax structure. It does so by

way of implication in a statute facially concerned with pleading requirements. As a result, there is authorized an inherently vague, indefinite, inconsistent and unpredictable tax, though one of major import, considering its almost universal application. Such a tax by property type or category, absent any specifications of the various types or categories contemplated, and absent procedures (presumably administrative) for their establishment based on clear statutory definitions, necessarily lacks uniformity and equality. Thus, property owners are deprived of substantive due process and equal protection of the laws. For this reason, subdivision 3 of section 307 cannot be constitutionally sustained.

For the foregoing reasons, I agree that subdivisions 3, 4 and 5 of section 307 of the Real Property Tax Law are unconstitutional and vote to affirm.

COHALAN and O'CONNOR, JJ., concur with LAZER, J. P.; MANGANO, J., concurs with the result, in a separate opinion.

Order of the Supreme Court, Nassau County, entered January 31, 1979, affirmed insofar as appealed from, without costs or disbursements.