## (May 14, 1981)

■ In the Matter of COLT INDUSTRIES, INC., Appellant, v FINANCE ADMINISTRATOR OF THE CITY OF NEW YORK et al., Respondents, and ROBERT ABRAMS, as Attorney-General of the State of New York, Intervenor-Respondent. — Order, Supreme Court, New York County, entered on June 12, 1980, affirmed, on the opinion of Mangan, J., at Special Term, without costs and without disbursements. Concur — Kupferman, Sandler, Markewich and Lynch, JJ.

Murphy, P.J., dissents in part in a memorandum as follows: Petitioner Colt Industries, Inc. (Colt) is the owner of an office building located at 430 Park Avenue in Manhattan. Colt brought seven proceedings to review the real property tax assessment on that property for various years between 1969 and 1977. In paragraph 8 of each petition, Colt alleged: "8. The said assessments are erroneous by reason of overvaluation and inequality in that the same are in excess of the full value of the said real property and of the sum for which said real property under ordinary circumstances would sell as of January 25th, 1975, as shown in column '8' of Schedule 'A' and in that said assessments are proportionately higher than similar property in the City of New York, and the extent of such overvaluation is shown in column '9' of Schedule 'A'." As will be developed more fully below, this appeal is

limited to a consideration of whether the assessments on Colt's property are erroneous by reason of inequality. In its motion at Special Term, Colt sought, *inter alia,* to have section 307 of the Real Property Tax Law (L 1978, ch 476, § 1) and subdivision 3 of section 720 of the Real Property Tax Law (L 1979, ch 126, § 2) declared to be unconstitutional. This branch of Colt's motion precipitated a discussion by Special Term of section 166-1.0 (subd b, par 3) of the Administrative Code of the City of New York. This provision reads as follows: "b. Such review shall be allowed only on one or more of the following grounds, which must be specified in such petition: *** 3. That the assessment is erroneous by reason of inequality, in that it has been made at a higher proportionate valuation than the assessment of other real property of like character in the same ward or section, or other real property on the assessment rolls of the city for the same year, specifying the instances in which such inequality exists and the extent thereof, and stating that the petitioner is or will be injured thereby." Petitioner Colt construed section 166-1.0 (subd b, par 3) of the Administrative Code as requiring that inequality in assessment be determined upon a "whole-roll" basis. Essentially, Colt maintained that the ratio of assessed valuation to full valuation was higher for its property than the ratio for all property upon the assessment rolls in New York City. It was Colt's contention that its assessments should be adjusted downward through the use of that "whole-roll" comparison. The respondents, on the other hand, read section 166-1.0 (subd b, par 3) of the Administrative Code as creating different classes of property in the five boroughs. Basically, it was respondents' belief that the petitioner's building should be compared with other high-rise office buildings in Manhattan. Special Term adopted the respondents' reasoning and found that inequality within the boundaries of New York City must be resolved upon a "class" basis. Since section 166-1.0 (subd b, par 3) of the Administrative Code was special legislation covering New York City, Special Term found that section 307 of the Real Property Tax Law was not controlling. Thus, the constitutionality of section 307 of the Real Property Tax Law was not reached. In view of the fact that the equalization rate promulgated for the City of New York by the State Board of Equalization and Assessment (SBEA) was founded upon a "whole-roll" comparison, the court at Special Term found that the SBEA rate was not a reliable measure for a "classified" system of assessment. Again, Special Term did not pass upon the constitutionality of subdivision 3 of section 720 of the Real Property Tax Law. Historically, there is some indication that a "classified" system has been followed in assessing real property in New York City. Despite this historical precedent, the overriding question still remaining is whether the respondents have employed a proper method of assessment over these many years *(Matter of Hellerstein v Assessors of Town of Islip,* 37 NY2d 1, 5). In the absence of any controlling case law addressed to the correct construction of section 166-1.0 (subd b, par 3) of the Administrative Code, this question may be approached as a novel one. The following considerations lead to the conclusion that the City of New York should follow the "whole-roll" method of comparison. First, attention should be focused upon the recent case of *Matter of Rokowsky v Finance Administrator of City of N.Y.* (41 NY2d 574). The prime issue presented in *Rokowsky* was whether inequality of assessment could be established by comparison solely on the basis of the State equalization rate for a particular borough or whether the city rate must be used. In answering this question, the Court of Appeals stated, *inter alia,* that the city-wide rate must be used. In rejecting the petitioner's interpretation of section 166-1.0 (subd b, par 3) of the Administrative Code,

the Court of Appeals asserted: "A more reasonable interpretation, however, would permit comparison only with property on the assessment rolls in the aggregate." *(Matter of Rokowsky v Finance Administrator of City of N.Y., supra,* p 577.) This last statement by the highest court would seem to preclude any interpretation of section 166-1.0 (subd b, par 3) of the Administrative Code that would permit classification of properties in New York City for purposes of assessment. Second, section 166-1.0 (subd b, par 3) of the Administrative Code must be construed, if possible, to uphold its constitutionality. (McKinney's Cons Laws of NY, Book 1, Statutes, § 150, subd c, pp 321-325; *People v Bell,* 306 NY 110, 114.) In that regard, it would be unconstitutional for the city counsel to permit the assessors to determine informally (i) the classes of real property in the city and (ii) the ratio at which each class would be taxed in relation to full value. *(Gautier v Ditmar,* 204 NY 20, 28.) Hence, another reason is presented for construing section 166-1.0 (subd b, par 3) of the Administrative Code in such a fashion as to find a "whole-roll" rather than a "classified" system of assessment. Third, particular cognizance must be taken of subdivision b of section E17-8.0 of the Administrative Code which reads as follows: "b. Such statement shall contain the street, the section or ward, the block and lot and map or identification numbers of such real estate embraced within such district; the sum for which, in their judgment, each separately assessed parcel of real estate would sell under ordinary circumstances if it were wholly unimproved: and separately stated, the sum for which the same parcel would sell under ordinary circumstances with the improvements, if any, thereon. The assessors shall include in such statement such other information as the finance administrator may, from time to time, require." The Court of Appeals has found that the statutory test of full value is the price at which the property would sell "under ordinary circumstances." *(People ex rel. Parklin Operating Corp. v Miller,* 287 NY 126, 129.) Consequently the respondents are obligated to assess all real property in New York City at full value. If all real property in the city is assessed at full value, then the ratio of assessed value to full value will be one to one for all property. Under such a circumstance, classes could not exist since all properties would have the same ratio of assessed to full value. Simply stated, the concepts of "full value assessment" and "classified assessment" are inconsistent, and thus cannot coexist in the same tax system. Subdivision b of section E17-8.0 of the Administrative Code makes it clear that New York City is on a "full value" system. Fourth, section 166-1.0 (subd b, par 3) of the Administrative Code should be interpreted so as to avoid an absurd result (McKinney's Cons Laws of NY, Book 1, Statutes, § 145, pp 294-297). Undisputedly, a taxpayer may prove inequality by pleading and proving that the assessment "has been made at a higher proportionate valuation than the assessment * * * of other real property on the assessment rolls of the city for the same year". This second portion of section 166-1.0 (subd b, par 3) of the Administrative Code, following the disjunctive "or", needs no construction because it unambiguously refers to a "whole-roll" comparison. Inequality may also be shown with reference to the first portion of section 166-1.0 (subd b, par 3) of the Administrative Code, preceding the word "or". A taxpayer may compare the assessment on his property with "other real property of like character in the same ward or section". If the phrase "other real property of like character" is viewed as creating classes of real property, then the code provision would create an absurd result. A taxpayer could prove inequality in assessment by either "class" comparison under the first portion or "whole-roll" comparison under the second portion. To be consistent and to avoid chaos, the city's tax

system may employ either "class" or "whole-roll" comparison. It may not simultaneously employ these two incompatible formulae. In order to harmonize the first portion of section 166-1.0 (subd b, par 3) of the Administrative Code with the second portion, the courts are given a certain degree of liberality in construing that first portion to conserve the spirit and intent of the entire section (McKinney's Cons Laws of NY, Book 1, Statutes, § 145, p 296). The first portion may be read in accord with the second portion if it is assumed that the "other real property of like character" has the same equalization rate as that of all the city real property. In order to facilitate the evidentiary task of a taxpayer in proving inequality, he may thus choose to establish his case through a comparison with "other real property of like character" rather than with properties selected from remote areas of the city. By seeking to prove inequality under the first portion of section 166-1.0 (subd b, par 3) of the Administrative Code, it is incumbent upon the taxpayer to demonstrate that the "other real property of like character" is being correctly taxed vis-à-vis all the real property in the city. While this construction of the first portion does carry with it a minor assumption, it otherwise does give a harmonious reading to the entire section of the Administrative Code. Where the New York City Charter and Administrative Code are silent on tax matters relating to practice, form, substance and procedural detail, resort must be had to the provisions of the Tax Law *(People ex rel. American Sugar Refining Co. v Sexton,* 274 NY 304, 306, 307). However, for the reasons stated above, section 166-1.0 (subd b, par 3) of the Administrative Code constitutionally sets forth the pleading requirements for a tax proceeding based upon inequality. Therefore, as Special Term observed under a different construction of section 166-1.0 (subd b, par 3) of the Administrative Code, there is no necessity for considering the constitutionality of section 307 of the Real Property Tax Law insofar as that statute contains certain retroactive pleading requirements. Special Term properly denied as academic the branch of the motion to declare section 307 of the Real Property Tax Law unconstitutional. Had that constitutional issue been reached, subdivisions 3, 4 and 5 of section 307 would have been declared unconstitutional for the reasons enumerated in *Matter of Slewett & Farber v Board of Assessors of County of Nassau* (78 AD2d 403, upon rearg 80 AD2d 186). Neither the New York City Charter nor the Administrative Code sets forth the evidence that may be adduced in a tax proceeding challenging an assessment. Hence, resort must be had to section 720 of the Real Property Tax Law. Under the most recent amendment to subdivision 3 of section 720 of the Real Property Tax Law, a taxpayer may no longer use the SBEA equalization rate in proving inequality in any proceeding commenced after January 1, 1970, and not finally determined as of the effective date of the amendment, May 22, 1979 (L 1979, ch 126, § 1). The Legislature has the general power to prescribe rules of evidence and methods of proof. However, the Legislature would violate due process of law if it passed a statute that would practically shut out the evidence on a particular point. *(Board of Commissioners of Excise of City of Auburn v Merchant,* 103 NY 143, 148.) Despite the 1979 amendment to subdivision 3 of section 720 of the Real Property Tax Law, Colt may still prove inequality through the sample or the sales method. Hence, it cannot be said that the Legislature has closed off all avenues of proof. Nonetheless, the 1979 amendment may not be viewed in a vacuum. That amendment was clearly part of a concerted legislative effort to forestall the consequences of the *Hellerstein* decision (37 NY2d 1, *supra).* Prior to the 1979 amendment, comparison with the SBEA rate was the simplest and surest method of establishing inequality *(Guth*

*Realty v Gingold,* 34 NY2d 440, 450). The Legislature, through the 1979 amendment, thus removed the most direct and certain method of proving inequality for a reason totally unrelated to the validity of the SBEA rate. To the extent that the 1979 amendment represents an unfair legislative attempt to deprive Colt of effective redress in both the administrative and judicial forums, it deprives Colt of due process. Subdivision 3 of section 720 of the Real Property Tax Law should be declared unconstitutional insofar as it is retroactively operative against Colt's pending petitions that cover periods prior to its effective date of May 22, 1979. (Contra, *Matter of Slewett & Farber v Board of Assessors of County of Nassau, supra.)* It is unnecessary to reach the question of whether that statute may be validly applied against (i) a petition brought after the effective date to cover a tax period prior to the effective date and (ii) a petition brought after the effective date to cover a tax period after the effective date. Accordingly, the order of the Supreme Court, New York County, entered June 12, 1980, insofar as appealed from, which, *inter alia,* denied the branch of the motion to declare subdivision 3 of section 720 of the Real Property Tax Law unconstitutional, should be modified, on the law, by declaring subdivision 3 of section 720 of the Real Property Tax Law to be unconstitutional insofar as it is retroactively operative against pending petitions covering tax periods prior to May 22, 1979, and, as modified, it should be affirmed.